### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS
### WICHITA DIVISION

| | | |
|---|---|---|
| STATE OF KANSAS, *ET AL.* | § § § § § | |
| Plaintiffs, | § | |
| v. | § § | |
| MERRICK GARLAND, *ET. AL.* | § § § | Civil Action No. 6:24-cv-01086-TC-TJJ |
| Defendants. | § § § | |

### BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION

This case challenges an ATF rulemaking that exceeds the agency's statutory authority, is contrary to law, and unconstitutional.  It comes to this Court after weeks of litigation in the Eastern District of Arkansas.  Following preliminary-injunction briefing and oral argument, that court did not rule on Plaintiffs' time-sensitive request for preliminary relief.  Instead, it prematurely and erroneously dismissed Arkansas as a party from this lawsuit for lack of standing and transferred the case to this Court.

Plaintiffs have now requested an expedited hearing on their preliminary-injunction motion, Doc. 78, and a TRO, Doc. 81.  In addition to granting that relief, the Court should reconsider the Eastern District of Arkansas's *sua sponte* order dismissing Arkansas as a party for lack of standing.  Arkansas has standing to challenge the Final Rule because it will directly lead to a loss in specific tax revenue.  In concluding otherwise, the Eastern District of Arkansas made two errors.

First, it misapprehended Arkansas's burden of showing standing at the pleading stage and failed to assume the truth of the allegations in Plaintiffs' complaint.  The complaint alleges that "Arkansas charges a 1% short-term-rental tax on the cost of any table rentals that are at gun shows" and "has a sales tax that applies to sale of firearms at gun shows and online."  Compl. ¶ 70.  The complaint further alleges that Plaintiff "States that collect taxes or fees related to gun shows will lose revenue if the Final Rule goes into effect." *Id*. ¶ 65.  At the pleading stage, a court must assume the truth of those allegations, and that is sufficient to demonstrate Arkansas's—and the other Plaintiff States'—standing.  And the Eastern District of Arkansas's failure to do that was a fundamental error of law that compels reconsideration and correction.

Second, the Eastern District of Arkansas's conclusion that Arkansas wouldn't be harmed by the Final Rule because it might receive more revenue due to that change rests entirely on a misunderstanding of Arkansas law.  And Arkansas—had Defendants made such an argument—would have easily rebutted that assumption.  The Eastern District of Arkansas grounded its speculation that Arkansas could actually gain more revenue from the Final Rule on a mistaken assumption that Arkansas does not collect sales tax from firearm sales at gun shows.  But Arkansas law clearly says the contrary.  Indeed, the relevant statute and regulations demonstrate—and a declaration attached hereto underscores—that Arkansas collects sales tax on firearm sales at gun shows.  Thus, contrary to the Eastern District of Arkansas's *sua sponte* assumption, the Final Rule won't result in Arkansas's somehow gaining more revenue from sales by licensed dealers than it'll lose from a decrease in revenue from the special-event tax that Arkansas imposes on table rentals at gun shows.

Ultimately, Arkansas's loss of revenue is sufficient to demonstrate both standing and irreparable harm at this stage of the litigation.  Indeed, holding otherwise would create a split of

authority with the Northern District of Texas, which held that Texas's loss of sales tax revenue was sufficient to demonstrate both standing and irreparable harm. So the Court should grant reconsideration, reinstate Arkansas as a party to this case, and hold that Arkansas (along with the other Plaintiff States) has sufficiently demonstrated both standing and irreparable harm.

## BACKGROUND[1]

Last month, ATF adopted the challenged rule, which illegally expands the Gun Control Act's definition of when a firearm seller is "engaged in the business" of dealing firearms. *Definition of "Engaged in the Business" as a Dealer in Firearms*, 89 Fed. Reg. 28,968 (Apr. 19, 2024) ("Final Rule"). The Final Rule's effective date was just 31 days later on May 20. On May 1, a coalition of 21 States, three individuals, and one organization sued in the Eastern District of Arkansas to enjoin the Final Rule. Doc. 1. The parties briefed Plaintiffs' motion for a preliminary injunction, and that court held a hearing on May 17. Doc. 65.

On May 19, the day before the Final Rule's effective date, a separate district court entered a temporary restraining order against the Final Rule applicable to Texas and several private plaintiffs. *See Texas v. ATF*, No. 2:24-CV-89-Z, 2024 WL 2277848 (N.D. Tex. May 19, 2024). No such order came from the Eastern District of Arkansas, and on May 20, the Final Rule went into effect to the extent not enjoined by the *Texas* court, including in Plaintiff States.

The Eastern District of Arkansas did not rule on Plaintiffs' preliminary-injunction motion. Instead, on May 23—six days after it held a hearing on the motion and the fourth day of the Final Rule being in effect—that court entered an order dismissing *sua sponte* Arkansas as a party without prejudice due to a lack of standing. *See* Doc. 75. Having dismissed Arkansas, that

---

[1] For a complete background, *see* Plaintiffs' Memorandum in Support of their preliminary-injunction motion. Doc. 5.

court stated without analysis that "venue [wa]s improper in th[at] Court" and transferred the case to this district, "where venue appears to be proper." *Id.* at 5. It indicated that the transfer should take place "immediately," and the case was docketed in this court the same day.[2]

Plaintiffs now move for reconsideration of the Eastern District of Arkansas's order dismissing Arkansas as a party for lack of standing. That ruling misapprehended both Plaintiffs' burden of proof at this stage of the litigation and Arkansas's loss of tax revenue that will be directly caused by the Final Rule. For the reasons explained below, Arkansas has sufficiently demonstrated standing, both at the pleading stage and at the preliminary-injunction stage, and it has shown irreparable harm from the Final Rule.

## LEGAL STANDARD

"[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time" prior to final judgment. Fed. R. Civ. P. 54(b). The law-of-the-case "doctrine does not bind a judge to follow rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine." *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993). "The relevant prejudice is limited to lack of

---

[2] The Eastern District of Arkansas's order that the transfer take place "immediately" unlawfully prevented Plaintiffs from seeking reconsideration of that order in the Eastern District of Arkansas or the Eighth Circuit. *See Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co.*, LLC, 417 F.3d 953, 957 (8th Cir. 2005) (where order transfers a case outside the Eighth Circuit, the receipt of the file by the transferee court divests the Eighth Circuit of jurisdiction over transfer order). That order indisputably violated Eighth Circuit law directing "district court clerks [to] . . . wait a reasonable period before transferring case files after a transfer order is entered." *Midwest Motor Exp., Inc. v. Cent. States Se.*, 70 F.3d 1014, 1016 (8th Cir. 1995) (citing *In re Nine Mile Ltd.*, 673 F.2d 242, 244 (8th Cir. 1982); *see id.* ("[W]e direct that future transfer orders be effectuated in accordance with . . . *Technitrol*."); *id.* at 243 (explaining that district courts must "'hold up the transfer for a reasonable time pending possible petition for reconsideration or review.'" (quoting *Technitrol, Inc. v. McManus*, 405 F.2d 84, 86 (8th Cir. 1968)). As a result, the transfer order prematurely deprived Plaintiffs of their chosen forum.

sufficient notice that one judge is revisiting the decision of a prior judge and the opportunity to be heard with respect to the new ruling." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). "To reconsider interlocutory orders such as this under Rule 54(b), the Tenth Circuit consults the standard under Rule 59(e)." *Beaty v. Kansas Athletics, Inc.*, 454 F. Supp. 3d 1096, 1105 (D. Kan. 2020) (citing *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013)). In accordance with Rule 59(e), motions to reconsider in this district may be based on "new evidence," "the need to correct clear error[,] or [to] prevent manifest injustice." L.R. Rule 7.3. All three warrant reconsideration here.

## ARGUMENT

Reconsideration of the Eastern District of Arkansas's *sua sponte* order dismissing Arkansas for lack of standing is warranted. First, the allegations in the complaint sufficiently establish Arkansas's standing to challenge the Final Rule, and that court erred in going beyond the pleadings to dismiss Arkansas as a party. Second, that court erred in concluding that Arkansas lacks standing or has failed to demonstrate irreparable caused by the Final Rule.

**I.     The complaint sufficiently alleges that Arkansas will be harmed by a loss of tax revenue because of the Final Rule.**

The allegations in the complaint are sufficient to establish Arkansas's standing at the pleadings stage. The Eastern District of Arkansas reached a contrary conclusion only because it did not accept those allegations as true, as is required when considering whether to dismiss a party at the pleadings stage. This Court should reconsider and correct that clear legal error.

To establish standing, a plaintiff must establish (1) an injury in fact; (2) that the injury is fairly traceable to the defendant's action; and (3) that the injury will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must support allegations establishing standing "with the manner and degree of evidence required at the

successive stages of the litigation." *Id.* at 561.  "When evaluating a plaintiff's standing at the stage of a motion to dismiss on the pleadings, 'both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1152 (10th Cir. 2013) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  The court "must construe the statements made in the affidavits in the light most favorable to the petitioner." *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (en banc) (internal quotation marks omitted). "At the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Palma*, 707 F.3d at 1152 (quoting *Defs. of Wildlife*, 504 U.S. at 561) (further internal quotation marks omitted).

As the Eastern District of Arkansas noted, Arkansas's standing to challenge the Final Rule is based on a loss of tax revenue from (1) a decrease in sales tax receipts as a result of fewer firearms being sold; and (2) a decrease in special event sales tax receipts as a result of fewer firearms sellers renting tables and gun shows.  "Arkansas charges a 1% short-term-tax on the cost of any table rentals that are at gun shows in addition to a sales tax that applies to the sale of firearms at gun shows and online."  Doc. 75 at 3.  "Plaintiffs anticipate that Final Rule will reduce the number of firearms sold and the number of vendors at gun shows, resulting in a decrease in gun show table rentals and tax revenue."  *Id.*; s*ee* Compl. ¶ 70 (alleging that Arkansas collects taxes on firearm sales, including at gun shows, and gun show table rentals); *id.* ¶ 65 ("States that collect taxes or fees related to gun shows *will* lose revenue if the Final Rule goes into effect") (emphasis added).

A "pocketbook injury" such as a loss of tax revenue "is a prototypical form of injury in fact." *Collins v. Yellen*, 141 S. Ct. 1761, 1765 (2021). The Eastern District of Arkansas did not hold otherwise. Instead, in its dismissal order, that court faulted Arkansas for not submitting "declarations to establish potential harm" or "call[ing] at any witness at the preliminary injunction hearing to establish harm." Doc. 75 at 3. But in considering whether to dismiss Arkansas as a party for lack of standing, the court was required to accept the allegations in Plaintiffs' complaint as true and construe them in Arkansas's favor. *Palma*, 707 F.3d at 1052. The complaint alleges—based on ATF's own expert-derived estimate predicting that at least 10% of currently unlicensed sellers who will be forced to become licensed under the Final Rule will stop selling altogether—that the Final Rule will result in (1) fewer firearm sellers; (2) fewer vendors renting tables at gun shows; and (3) fewer firearm sales. *See* Compl. ¶¶ 61-68. As a result, Plaintiffs allege that "States that collect taxes or fees related to gun shows"—including Arkansas—"*will* lose revenue if the Final Rule goes into effect." Compl. ¶ 65.

The Eastern District of Arkansas misconstrued those allegations as merely alleging the possibility that Arkansas would lose revenue. Doc. 75 at 3 ("The State of Arkansas alleges in the complaint it may (or will) sustain reduced revenue as a result of potentially fewer tables being rented at guns shows."). At the stage of considering whether to dismiss a party for lack of standing, that was error. To the extent the Arkansas court doubted that the Final Rule would actually result in a loss of tax revenue, *see* Doc. 75 at 4, it was not allowed to consider those doubts at the motion-to-dismiss stage. *See Parma*, 707 F.3d at 1152.

The court should grant reconsideration and reinstate Arkansas as a party to this lawsuit. "[A] motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012

(10th Cir. 2000).  As explained above, the Arkansas court misapprehended controlling law when it *sua sponte* dismissed Arkansas for lack of standing based on its refusal to credit the complaint's allegations that Arkansas will suffer a loss in tax revenue because of the Final Rule.

It's that fundamental legal error that requires reconsideration, and Plaintiffs do not ask this Court to simply "revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*  Indeed, Defendants never moved to dismiss Arkansas as a party on standing grounds.  They merely embedded within their preliminary-injunction response an argument that venue was improper that district because (1) all the State Plaintiffs lacked standing; and (2) without Arkansas as a party, no plaintiff resided in that district.  *See* Doc. 40 at 29-30.  Nor did Defendants suggest that the Eastern District of Arkansas could fail to credit the allegations in Plaintiffs' complaint that the Final Rule would result in a loss of tax revenue. Because that court skipped ruling on Plaintiffs' preliminary-injunction motion and instead *sua sponte* dismissed Arkansas as a party and transferred the case, Arkansas was never given an opportunity to brief the issue of a pleadings-stage dismissal until this motion.  That alone warrants reconsideration.

## II.     Arkansas's loss of tax revenue due to the Final Rule is sufficient both to establish standing and irreparable harm at the preliminary-injunction stage.

Arkansas has standing to challenge the Final Rule based on the loss in tax revenue it will cause.  A "pocketbook injury" such as a loss of tax revenue "is a prototypical form of injury in fact." *Collins*, 141 S. Ct. at 1765.  The Supreme Court has held that "a loss of specific tax revenues" by a state as a result of a federal rule is a "direct injury" sufficient to establish Article III standing. *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992).  Even a single dollar of lost tax revenue is sufficient. *See Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1235 (10th Cir. 2012) ("[T]he extent of the injury is not relevant to determination of standing.").

8

As explained above, Plaintiffs' complaint sufficiently alleges that Arkansas will suffer a loss of two "specific" sources of "tax revenue": (1) sales tax of firearms sales and (2) special event tax of gun show table rentals. *See* Compl. ¶¶ 61-68. Those losses are directly connected to firearm sales and stand in stark contrast to situations "where a federal regulation would have solely a 'generalized impact' on the economy of a state or a state's general tax revenues," which the Tenth Circuit has held falls short of establishing standing. *Wyoming*, 674 F.3d at 1234.

A.   The Eastern District of Arkansas's *sua sponte* dismissal order rests on mistaken assumptions.

The Eastern District of Arkansas's conclusion that Arkansas lacked standing rests on mistaken assumptions about the Final Rule and Arkansas's tax code that Arkansas would have happily addressed had it been given the opportunity to do so. And absent those mistakes, the Eastern District of Arkansas's speculation about Arkansas's standing evaporates.

In questioning Arkansas's standing, the Eastern District of Arkansas engaged in two lines of speculation. First, it doubted "[t]he notion that an eligible, law abiding, person desiring to buy a firearm would refrain from acquiring one if required follow the proposed rule, and that that decision might affect tax revenue." Doc. 75 at 4. That misapprehends the Final Rule's effect. The Final Rule does not place any requirements on buyers; it regulates sellers. The Final Rule's effects on State revenue flow not from influencing the desire of buyers to purchase firearms or their willingness to do so, but by reducing the number of willing sellers. Indeed, that's the very purpose of the Final Rule. *See* PI Resp., Doc. 40, at 52 ("ATF has exercised its authority to issue regulations . . . to reduce the volume of unlicensed dealing in firearms.").

Second, the Eastern District of Arkansas speculated that "[s]ince the sales tax on the sale of firearms is significantly higher than the 1% tax on gun show tables, the State of Arkansas may well net a tax collection increase should the rule go into effect." Doc. 75 at 4. It appears that the

court believed that (1) firearms sold at gun shows by unlicensed sellers are not subject to sales tax in Arkansas, and as a result of the Final Rule (2) gun show sales would be "diverted to a licensed dealer" who would charge sales tax. *Id.* Thus, an increase in collected 6.5% sales tax could offset the loss of 1% table-rental tax revenue.

Defendants never made that argument, and it rests on unbriefed assumptions and a fundamental misunderstanding of Arkansas law. To start, on the face of the complaint there is no basis for the Eastern District of Arkansas's assumption that a person who might otherwise purchase a firearm at a gun show from an unlicensed seller will automatically purchase the same firearm from a licensed seller. Indeed, like any other purchasing decision, that decision could be influenced by any number of factors—from pricing to the personality of the seller—and there's simply no basis in the complaint for assuming sales will remain constant despite a reduction in willing sellers.

But even if that assumption were procedurally valid, the Eastern District of Arkansas is simply wrong about Arkansas's tax laws and the Final Rule's impact. Under regulations issued by the Arkansas Department of Finance and Administration—which administers Arkansas's sales-tax regulations—promoters of special events, including gun shows, must register with the Department and obtain either a sales tax permit (if they do not already have one) or a sales tax reporting number. *See* Ark. Admin. Code 006.05.212-GR-49.1; Ex. A, Collins Decl ¶ 6.[3] Gun-

---

[3] While the plain text of the relevant regulations makes clear that Arkansas will suffer a loss due to the Final Rule, Arkansas has also attached a declaration from the relevant agency. And declaration testimony may be considered alongside Plaintiffs' complaint in assessing standing. *See Palma*, 707 F.3d at 1153 n.8 (holding that where the plaintiff had submitted "supplemental affidavits to demonstrate standing," the court would "consider those affidavits as well"). When the Court is considering declarations for purposes of assessing pleading-stage standing, it must "construe the statements made in the [declarations] in the light most favorable to" Plaintiffs. *Walker*, 450 F.3d at 1089. To the extent the Eastern District of Arkansas believed that any

show vendors who already have a retail sales tax permit must collect and remit sales tax directly to the Department.  *Id.*  Gun-show vendors who do not have a retail sales tax permit must collect sales tax and report and pay the tax to the to the gun-show promoter at the end of the event, who in turn must remit the tax to the department.  *Id.*

Thus, contrary to the unbriefed assumption by the Eastern District of Arkansas, any firearm sales which previously would have been made by unlicensed sellers at gun shows that are diverted to licensed sellers as a result of the Final Rule would not result in any increase in sales-tax revenue.  Instead, Arkansas would suffer a loss in special-event tax revenue from a lower number of table rentals at gun shows.  Additionally, to the extent that sales by unlicensed sellers at gun shows—who are required to collect sales tax—are diverted to different unlicensed sellers outside of gun shows—who may not be required to collect sales tax—that would result in a further decrease in revenue.  *See* Collins Decl. ¶¶ 6, 8-9.

The Northern District of Texas considered the same allegations as here: (1) "that the Final Rule will prohibit otherwise eligible persons from obtaining a [FFL], thereby reducing total gun sales at gun shows"; and "because Texas has a sales tax that applies to the sale of firearms at gun shows, it will sustain financial loss."  *Texas*, 2024 WL 2277848 at *3.  That court had no trouble concluding that Texas had demonstrated standing.  *Id.*  The Eastern District of Arkansas's contrary *sua sponte* speculation that the Final Rule could lead to more, not less,

_____

Plaintiffs may have lacked standing at the preliminary-injunction stage, the proper course would have been to solicit supplemental materials to assure itself of jurisdiction rather than prematurely dismissing Arkansas as a party.  *See, e.g.*, *Texas*, 2024 WL 2277848 at *3-4 (holding that Louisiana, Mississippi, and Utah had failed to demonstrate standing and thus "not be afforded relief at this stage of litigation"); Order dated May 19, 2024, Doc. 45 (directing the plaintiffs to submit supplemental briefing on standing following the TRO).

revenue was unfounded.  The court should grant reconsideration and part ways with that mistaken analysis.  *Servants of Paraclete*, 204 F.3d at 1012.

      B.    <u>Arkansas has sufficiently demonstrated both standing and irreparable harm.</u>

As explained above, the Final Rule will result in a decrease to two specific revenue sources: sales tax and special-events tax.  The allegations in the complaint, together with the declarations submitted to the Court, are sufficient to show both standing and irreparable harm at this stage.

      1.    Arkansas has made a sufficient showing of standing at the preliminary-injunction stage.

The burden to demonstrate standing is commensurate "with the manner and degree of evidence required at the successive stages of the litigation."  *Defs. of Wildlife*, 504 U.S. at 561.  At the preliminary-injunction stage, standing becomes part of the analysis of whether a plaintiff has demonstrated "it is substantially likely to succeed on the merits."  *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

Arkansas has shown a substantial likelihood that it will suffer a loss in tax revenue due to the Final Rule.  Defendants' own concessions establish this.  ATF estimates that a quarter of currently unlicensed sellers will be required to become licensed under the Final Rule.  *See* PI Resp., Doc. 40, at 14 n.10.  Defendants admit that the intent of the Final Rule is to reduce sales by that class of sellers.  *Id.* at 52 ("ATF has exercised its authority to issue regulations . . . to reduce the volume of unlicensed dealing in firearms.").  And Defendants concede that some number of currently unlicensed sellers will refrain from selling their firearms at all rather than going through the laborious process to obtain licenses.  The Final Rule estimates that 10% of those sellers are "likely to be either unwilling or unable to become licensed as an FFL as a result of the rule."  89 Fed. Reg. at 29,054.  In other words, the Final Rule predicts that 90% of the

currently unlicensed sellers who ATF considers to be operating illegally under the Final Rule, will become licensed and continue selling firearms.  Defendants expect that as this litigation proceeds, the evidence will show that prediction is overly optimistic.  But even that admitted 10% drop is sufficient at this stage of the litigation.

Plaintiffs' evidence further establishes a strong likelihood that there will be a reduction in business at gun shows, and Defendants haven't contested that evidence.  *See* Journey Dec. ¶¶ 4, 10, 15; Black Dec. ¶¶ 9-12; Fry Decl. ¶¶ 8-9; Maxey Dec. ¶¶ 4, 8-11.  Even assuming the accuracy of Defendants' estimate that most currently unlicensed sellers will eventually become licensed, that is a "multi-month application process" that will prevent those sales from occurring in the meantime.  Journey Decl. ¶ 10.  Numerous gun shows, including in Arkansas, are scheduled to occur in the near term, far sooner than sellers would be able to obtain licenses.  *See* PI Br., Doc. 5, at 14 (enumerating scheduled shows through July 31, 2024, including 12 in Arkansas); *see also Texas*, 2024 WL 2277848 at *3 (relying on similar evidence of scheduled gun shows).

The Final Rule's intended reduction of firearm sales by currently unlicensed sellers, including at gun shows, will lead to a predictable loss in state revenue.  *See New York v. Yellen*, 15 F.4th 569, 577 (2d Cir. 2021) (holding that States demonstrated standing where "the chain of economic events that the Plaintiff States have proffered in this case strikes us as realistic, and the challenged action's effect on their residents' decisions seems to us entirely predictable") (internal quotation marks omitted).  Fewer firearm sales due to some currently unlicensed sellers exiting the market entirely will result in lower sales tax revenues.  *See* Collins Decl. ¶ 8 ("If . . . there is a decrease in firearms sales in Arkansas, there will naturally be a decrease in sales tax revenue from the sale of firearms.").  And lower participation in gun shows by currently unlicensed

sellers means fewer table rentals, leading to a decrease in special-event tax revenues.  *Id.* ¶ 9 ("If there is a decrease in the number of vendors renting tables at gun shows in Arkansas, there will naturally be a decrease in special-event sales tax revenue.").  That injury is sufficient to demonstrate standing at this stage of the litigation.

Indeed, the district court considering a challenge to the Final Rule brought by a separate Texas-led coalition had no trouble concluding that Texas had demonstrated standing due to the same revenue-loss injuries that Arkansas asserts here.  *See Texas v. ATF*, No. 2:24-CV-89-Z, 2024 WL 2277848, at *3 (N.D. Tex. May 19, 2024).  The court concluded that the "Final Rule will prohibit otherwise eligible persons from obtaining a [FFL], thereby reducing total gun sales at gun shows."  *Id.*  And because "Texas has a [6.25%] sales tax that applies to the sale of firearms at gun shows, it will sustain financial loss."  *Id.*  That is sufficient to demonstrate standing at this stage of the litigation.  *See id.*

So too here.  Like Texas, Arkansas collects sales tax from firearms sales at gun shows and will suffer the same pocketbook injury as Texas due to a decrease in those sales.  Arkansas's standing is further underscored by the additional financial injury it will suffer due to the loss of special-event tax revenue due to a decrease in table rentals at gun shows, a revenue stream that Texas lacks.  *See* Collins Decl. ¶¶ 4, 9.

2.      Arkansas has sufficiently demonstrated irreparable harm.

Arkansas's loss of tax revenue due to the Final Rule constitutes irreparable harm because it cannot be compensated through money damages.  "Imposition of monetary damages that cannot later be recovered for reasons such as sovereign immunity constitutes irreparable injury."  *Chamber of Com. of U.S. v. Edmondson*, 594 F.3d 742, 770-71 (10th Cir. 2010).  "[A] plaintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will

experience harm that cannot be compensated after the fact by monetary damages." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (internal quotation omitted). While "[p]urely speculative harm will not suffice," *id.*, "an injury is not speculative simply because it is not certain to occur." *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003).

As explained above, the Final Rule will have the predictable (and intended) effect of reducing firearm sales by currently unlicensed sellers, leading to a loss in revenue from both firearm sales and gun show table rentals. That loss in tax revenue cannot be remedied through monetary damages. Arkansas has thus shown a "significant risk" that it will be irreparably harmed by the Final Rule. *RoDa Drilling Co.*, 552 F.3d at 1210.

Indeed, the court considering the Texas-led coalition's challenge to the Final Rule held that Texas's revenue loss due to the Final Rule easily satisfied the irreparable-harm requirement. *See Texas*, 2024 WL 2277848, at *7 ("That Plaintiffs would suffer irreparable injury absent an injunction is hard to dispute. Plaintiff Texas faces the irreparable injury of revenue loss."). The only difference here is that, in addition to the sales-tax loss that Arkansas and Texas share, Arkansas faces the additional irreparable injury of a loss in special-event tax revenue due to a reduction in gun show table rentals. *See* Ark. Code Ann. 26-52-518; s*ee* Collins Decl. ¶¶ 4, 9. Arkansas thus has an even better case for irreparable harm than Texas.

## CONCLUSION

The Court should grant reconsideration of the prior order dismissing Arkansas for lack of standing.

Respectfully submitted,

KRIS W. KOBACH
Kansas Attorney General

*/s/Abhishek S. Kambli*
Abhishek S. Kambli, 29788
*Deputy Attorney General*
Erin B. Gaide, 29691
*Assistant Attorney General*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-2215
Fax: (785) 296-3131
abhishek.kambli@ag.ks.gov
erin.gaide@ag.ks.gov


*Counsel for Plaintiff State of Kansas*

TIM GRIFFIN
Arkansas Attorney General

*/s/ Nicholas J. Bronni*
*Nicholas J. Bronni (2016097)
 *Solicitor General*
*Dylan L. Jacobs (2016167)
 *Deputy Solicitor General*
323 Center Street, Suite 200
Little Rock, AR  72201
Telephone: (501) 682-2007
Fax: (501) 683-2520
nicholas.bronni@arkansasag.gov
dylan.jacobs@arkansasag.gov


*Counsel for Plaintiff State of Arkansas*

BRENNA BIRD
Iowa Attorney General

*/s/ Eric H. Wessan*
*Eric H. Wessan
*Solicitor General*
Office of the Iowa Attorney General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
Eric. Wessan@ag.iowa.gov


*Counsel for Plaintiff State of Iowa*

AUSTIN KNUDSEN
 Montana Attorney General

*/s/ Christian B. Corrigan*
CHRISTIAN B. CORRIGAN, 25622
 *Solicitor General*
*PETER M. TORSTENSEN, JR.
 *Deputy Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders Street
Helena, Montana 59601
(406) 444-2707
christian.corrigan@mt.gov
peter.torstensen@mt.gov


*Counsel for Plaintiff State of Montana*

STEVE MARSHALL
Alabama Attorney General

*/s/ Edmund G. LaCour, Jr.*
*Edmund G. LaCour, Jr.
*Solicitor General*
Office of the Alabama
Attorney General
501 Washington Avenue
P.O. Box 300152
Montgomery, AL  36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Email: Edmund.LaCour@AlabamaAG.gov


*Counsel for Plaintiff State of Alabama*

TREG R. TAYLOR
Alaska Attorney General

*/s/ Aaron C. Peterson*
*Aaron C. Peterson
*Senior Assistant Attorney General*
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: aaron.peterson@alaska.gov

*Counsel for Plaintiff State of Alaska*

CHRISTOPHER CARR
Georgia Attorney General

*/s/ Stephen Petrany*
*Stephen Petrany
*Solicitor General*
Office of the Attorney General of Georgia
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

RAÚL R. LABRADOR
Idaho Attorney General

*/s/ Joshua N. Turner*
*Joshua N. Turner
*Chief of Constitutional Litigation and Policy*
*Alan M. Hurst
Solicitor General
Office of the Idaho Attorney General
P.O. Box 83720
Boise, Idaho 83720
Tel: (208) 334-2400
Josh.turner@ag.idaho.gov

*Counsel for Plaintiff State of Idaho*

TODD ROKITA
Indiana Attorney General

*/s/ James A. Barta*
*James A. Barta
*Solicitor General*
Office of the Attorney General of Indiana
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
Telephone:  (317) 232-0709
James.Barta@atg.in.gov


*Counsel for Plaintiff State of Indiana*

RUSSELL COLEMAN
Kentucky Attorney General

*/s/ Victor B. Maddox*
*Victor B. Maddox
*Aaron J. Silletto
*Zachary M. Zimmerer
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Victor.Maddox@ky.gov
Aaron.Silletto@ky.gov
Zachary.Zimmerer@ky.gov


*Counsel for Plaintiff Commonwealth of Kentucky*

ANDREW BAILEY
Missouri Attorney General

*/s/ Bryce Beal*
*Bryce Beal
*Assistant Attorney General*
Missouri Attorney General's Office
207 West High Street
Jefferson City, MO 65101
(573) 751-6633
Bryce.Beal@ago.mo.gov


*Counsel for Plaintiff State of Missouri*

MICHAEL T. HILGERS
Nebraska Attorney General

*/s/ Zachary A. Viglianco*
*Zachary A. Viglianco
*Deputy Solicitor General*
Office of the Nebraska
Attorney General
2115 State Capitol
Lincoln, NE 68509
(531) 739-7645
zachary.viglianco@nebraska.gov


*Counsel for Plaintiff State of Nebraska*

JOHN M. FORMELLA
New Hampshire Attorney General

/s/Brandon F. Chase
*Brandon F. Chase
*Assistant Attorney General*
New Hampshire Department of Justice
1 Granite Place – South
Concord, NH 03301
(603) 271-3650
brandon.f.chase@doj.nh.gov


*Counsel for Plaintiff New Hampshire*

DREW H. WRIGLEY
North Dakota Attorney General

/s/ *Katie L. Carpenter*
*Katie L. Carpenter
*Deputy Solicitor General*
North Dakota Office of the Attorney
General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
Email: katcarpenter@nd.gov


*Counsel for Plaintiff State of North
Dakota*

GENTNER DRUMMOND
Oklahoma Attorney General

/s/ Garry M. Gaskins, II
*GARRY M. GASKINS, II
 *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:        (405) 521-3921
garry.gaskins@oag.ok.gov


*Counsel for Plaintiff State Oklahoma*

ALAN WILSON
South Carolina Attorney General

/s/ *Joseph D. Spate*
*Joseph D. Spate
*Assistant Deputy Solicitor General*
Office of the Attorney General
State of South Carolina
1000 Assembly Street
Columbia, SC  29201
(803) 734-3371
josephspate@scag.gov


*Counsel for Plaintiff State South Carolina*

MARTY J. JACKLEY
South Dakota Attorney General

*/s/ Charles D. McGuigan*
*Charles D. McGuigan
*Deputy Attorney General*
Office of the Attorney General
1302 E. Hwy. 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Facsimile: (605) 773-4106
charles.mcguigan@state.sd.us


*Counsel for Plaintiff State of South Dakota*

JONATHAN SKRMETTI
Tennessee Attorney General and Reporter


*/s/ Whitney D. Hermandorfer*
*WHITNEY D. HERMANDORFER
*Director of Strategic Litigation Unit*
*BRIAN DANIEL MOUNCE
*Counsel for Strategic Litigation &
Assistant Solicitor General*
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-1400
whitney.hermandorfer@ag.tn.gov
brian.mounce@ag.tn.gov


*Counsel for the State of Tennessee*

JASON S. MIYARES
Attorney General of Virginia

/s/ *Kevin M. Gallagher*
*Kevin M. Gallagher
*Principal Deputy Solicitor General*
*Brendan T. Chestnut
*Deputy Solicitor General*
*M. Jordan Minot
*Assistant Solicitor General*
Virginia Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Fax: (804) 786-1991
Email: kgallagher@oag.state.va.us
Email: bchestnut@oag.state.va.us
Email: mminot@oag.state.va.us


*Counsel for Plaintiff Commonwealth of
Virginia*

PATRICK MORRISEY
West Virginia Attorney General


*/s/ Michael R. Williams*
*Michael R. Williams
*Principal Deputy Solicitor General*
Office of the Attorney General of West
Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvago.gov


*Counsel for State of West Virginia*

BRIDGET HILL
Wyoming Attorney General

/s/ Ryan Schelhaas
*Ryan Schelhaas
 *Chief Deputy Attorney General*
Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov

*Counsel for Plaintiff State Wyoming*

*/s/ Michael D. McCoy*
*Michael D. McCoy
*William E. Trachman
Mountain States
Legal Foundation
 2596 South Lewis Way
 Lakewood, Colorado 80227
 (303) 292-2021
Mmccoy@mslegal.org

*Counsel for Plaintiffs Allen Black, Donald
Maxey, and Chisholm Trail Antique Gun
Association*

*/s/ Anna St. John*
*Anna St. John
Hamilton Lincoln Law Institute
1629 K St. NW Suite 300
Washington, DC 20006
(917) 327-2392
anna.stjohn@hlli.org

*/s/ M. Frank Bednarz*
*M. Frank Bednarz
Hamilton Lincoln Law Institute
1440 W. Taylor St. #1487
Chicago, IL 60607
(801) 706-2690
frank.bednarz@hlli.org

*Counsel for Plaintiff Phillip Journey*

*pro hac vice* forthcoming