# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS
## WICHITA DIVISION

| | | |
|---|---|---|
| STATE OF KANSAS, ET AL., | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| MERRICK GARLAND IN HIS | § | Civil Action No. 6:24-cv-01086-TC-TJJ |
| OFFICIAL CAPACITY AS ATTORNEY | § | |
| GENERAL OF THE UNITED STATES, | § | |
| ET AL., | § | |
| | § | |
| *Defendants.* | | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

BACKGROUND ...................................................................................................................... 1

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT ......................................................................................................................... 4

I.    Plaintiffs Lack Standing and Fail to Establish Irreparable Harm ................................ 4

    A.    The State Plaintiffs Demonstrate Neither Standing Nor Irreparable Harm .................. 4

    B.    The Individual Plaintiffs Lack Standing to Bring a Pre-Enforcement Challenge
        and Fail to Show Irreparable Harm ............................................................................... 7

    C.    Chisholm Trail Also Lacks Standing and Fails to Show Irreparable Harm ................. 9

II.   Plaintiffs Are Not Substantially Likely to Succeed on the Merits ............................... 9

    A.    Defendants Have Authority to Promulgate the Rule ..................................................... 9

    B.    The Rule Is Consistent with the Text of the GCA ..................................................... 12

    C.    The Rule Does Not Implicate the Major Questions Doctrine .................................... 15

    D.    The Rule Is Not Unconstitutionally Vague ................................................................ 15

    E.    The Rule Is Not Arbitrary And Capricious ................................................................ 16

    F.    The Rule Comports with the Second Amendment ...................................................... 17

III.  The Balance of Equities and Public Interest Weigh Against Preliminary Relief ................. 18

IV.   Any Relief Should Be Limited ..................................................................................... 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Abramski v. United States,*
  573 U.S. 169 (2014) ............................................................................................................2

*Alaska Airlines, Inc. v. Brock,*
  480 U.S. 678 (1987) ..........................................................................................................20

*Arizona v. Biden,*
  40 F.4th 375 (6th Cir. 2022) ............................................................................................20

*Bonidy v. U.S. Postal Serv.,*
  790 F.3d 1121 (10th Cir. 2015) ........................................................................................17

*Bradford v. DOL,*
  101 F.4th 707 (10th Cir. 2024) ........................................................................................15

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) ..........................................................................................................20

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ................................................................................................. 6, 7, 9

*Cole v. USDA,*
  33 F.3d 1263 (11th Cir. 1994) ..........................................................................................11

*Colo. Outfitters Ass'n v. Hickenlooper,*
  823 F.3d 537 (10th Cir. 2016) ..................................................................................... 8, 9

*Colorado v. EPA,*
  989 F.3d 874 (10th Cir. 2021) ............................................................................. 4, 5, 7, 9

*Cox v. Louisiana,*
  379 U.S. 559 (1965) ..........................................................................................................16

*Dias v. City & Cnty. of Denver,*
  567 F.3d 1169 (10th Cir. 2009) ........................................................................................16

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ..........................................................................................................17

*Farm Bureau Prop. & Cas. Ins. Co. v. Biggs,*
  No. 2:20-cv-2558, 2021 WL 1348317 (D. Kan. Feb. 25, 2021)..........................................6

*FDA v. All. for Hippocratic Med.,*
  No. 23-235, slip. op. (U.S. June 13, 2024) ........................................................................8

*FDA v. Brown & Williamson Tobacco Corp.,*
 529 U.S. 120 (2000) ................................................................................................14

*Florida v. Mellon,*
 273 U.S. 12 (1927) ....................................................................................................5

*FTC v. Mandel Bros., Inc.,*
 359 U.S. 385 (1959) ................................................................................................14

*Garrison v. Baker Hughes Oilfield Operations, Inc.,*
 287 F.3d 955 (10th Cir. 2002) ................................................................................20

*Gill v. Whitford,*
 585 U.S. 48 (2018) ..................................................................................................19

*Holland Livestock Ranch v. United States,*
 655 F.2d 1002 (9th Cir. 1981) ................................................................................11

*Jewell v. United States,*
 749 F.3d 1295 (10th Cir. 2014) ..............................................................................11

*Labrador v. Poe ex. rel Poe,*
 144 S. Ct. 921 (2024) ..............................................................................................20

*Licon v. Ledezma,*
 638 F.3d 1303 (10th Cir. 2011) ..............................................................................17

*Maryland v. King,*
 567 U.S. 1301 (2012) ..............................................................................................19

*McRorey v. Garland,*
 99 F.4th 831 (5th Cir. 2024) ...................................................................................18

*N.M. Health Connections v. HHS,*
 946 F.3d 1138 (10th Cir. 2019) ..............................................................................17

*New Mexico v. Dep't of Interior,*
 854 F.3d 1207 (10th Cir. 2017) ..............................................................................20

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen,*
 597 U.S. 1 (2022) ..............................................................................................17, 18

*Nken v. Holder,*
 556 U.S. 418 (2009) ..................................................................................................4

*Nova Health Sys. v. Gandy,*
 416 F.3d 1149 (10th Cir. 2005) ................................................................................6

*NRA v. Brady,*
   914 F.2d 475 (4th Cir. 1990) ..........................................................................................10

*Pugin v. Garland,*
   599 U.S. 600 (2023) ........................................................................................................14

*Rangel-Lopez v. Cox,*
   344 F. Supp. 3d 1285 (D. Kan. 2018) ..............................................................................4

*Republic Aviation Corp. v. NLRB,*
   324 U.S. 793 (1945) ........................................................................................................11

*Sampson v. Murray,*
   415 U.S. 61 (1974) ............................................................................................................9

*Sheldon v. BOP,*
   No. 23-cv-00273, 2024 U.S. Dist. LEXIS 21698 (D. Colo. Feb. 7, 2024) ....................19

*Sierra Club, Inc. v. Bostick,*
   539 F. App'x 885 (10th Cir. 2013) .................................................................................18

*Sperry v. McKune,*
   445 F.3d 1268 (10th Cir. 2006) ......................................................................................16

*StreetMediaGroup, LLC v. Stockinger,*
   79 F.4th 1243 (10th Cir. 2023) .......................................................................................16

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ..................................................................................................4, 7, 8

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ........................................................................................................19

*U.S. Steel Corp. v. Astrue,*
   495 F.3d 1272 (11th Cir. 2007) ......................................................................................11

*United States v. Biswell,*
   406 U.S. 311 (1972) ........................................................................................................19

*United States v. Hosford,*
   82 F. Supp. 3d 660 (D. Md. 2015) .................................................................................19

*United States v. King,*
   735 F.3d 1098 (9th Cir. 2013) ........................................................................................13

*United States v. Morales-Lopez,*
   92 F.4th 936 (10th Cir. 2024) .........................................................................................15

*United States v. Nat'l Dairy Prods. Corp.,*
    372 U.S. 29 (1963) ........................................................................................16

*United States v. Platte,*
    401 F.3d 1176 (10th Cir. 2005) ....................................................................16

*United States v. Texas,*
    599 U.S. 670 (2023) ........................................................................................5

*USX Corp. v. Barnhart,*
    395 F.3d 161 (3d Cir. 2004) .........................................................................11

*Util. Air Regul. v. EPA,*
    573 U.S. 302 (2014) ......................................................................................15

*Vincent v. Garland,*
    80 F.4th 1197 (10th Cir. 2023) ...............................................................17, 18

*Welch v. City of Pratt,*
    214 F.3d 1219 (10th Cir. 2000) ....................................................................12

*Wyoming v. U.S. Dep't of Interior,*
    674 F.3d 1220 (10th Cir. 2012) .........................................................5, 6, 7, 9

**Statutes**

5 U.S.C. § 705 .....................................................................................................20

18 U.S.C. § 921 .....................................................................................................1

18 U.S.C. § 921(a)(13) ...................................................................................10, 13

18 U.S.C. § 921(a)(21)(C) ..............................................................................2, 13

18 U.S.C. § 921(a)(22) ..................................................................................12, 14

18 U.S.C. § 922(a)(1)(A) ......................................................................................1

18 U.S.C. § 922(b)(5) ............................................................................................1

18 U.S.C. § 922(c) .................................................................................................1

18 U.S.C. § 922(t)(1) .............................................................................................1

18 U.S.C. § 923(g)(1)(A) .......................................................................................1

18 U.S.C. § 926(a) ...........................................................................................9, 10

Pub. L. No. 99-308, 100 Stat. 449 (1986) .............................................................2

Pub. L. No. 117-159, 136 Stat. 1313 (2022) .............................................................................. 1, 2

**The Constitution**

U.S. Const. amend. II ........................................................................................................17

**Legislative Materials**

*Administrative Procedure Act*, S. Doc. No. 248, 79th Cong., 2d Sess. 277 (1946).....................20

**Regulations**

27 C.F.R. § 478.11 ...........................................................................................3, 13, 16, 17

27 C.F.R. § 478.13(b) ............................................................................................... 3, 16

27 C.F.R. § 478.13(c) ............................................................................................... 3, 4, 12

27 C.F.R. § 478.13(d) ............................................................................................... 4, 15

27 C.F.R. § 478.13(e) ......................................................................................................4

27 C.F.R. § 478.13(f) ......................................................................................................4

27 C.F.R. § 478.121........................................................................................................1

88 Fed. Reg. 61,993 (Sept. 8, 2023) ...................................................................................10

Final Rule, *Definition of "Engaged in the Business" as a Dealer in Firearms*,
89 Fed. Reg. 28,968 (Apr. 19, 2024) ......................................................................*passim*

**Other Authorities**

Chisholm Trail Antique Gun Association,
https://www.ctaga.com/gun-show ................................................................................9

Comment of Attorney General of New York, et al., Definition of "Engaged in the Business" as a
Dealer in Firearms, Docket No. ATF 2022R-17 (Dec. 7, 2023),
https://ag.ny.gov/sites/default/files/letters/multistate-comment-on-nprm-eitb-atf-rule.pdf ......20

In the Gun Control Act (GCA), Congress required those engaged in the business of dealing in firearms to obtain a federal license and comply with a series of verification, background-check, and recordkeeping obligations when transferring firearms.  Recognizing the harm to public safety caused by unlicensed dealing in firearms, Congress recently amended the GCA *via* the Bipartisan Safer Communities Act (BSCA) to expand the definition of engaged in the business of dealing.  In the Rule under review,[1] the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) exercised its statutory authority to promulgate regulations necessary to carry out the GCA by clarifying what it means to be "engaged in the business" of dealing in firearms and setting forth examples of conduct that presumptively does, or does not, rise to the level of engaging in the business of dealing.  Far from changing the GCA's definition of engaging in the business, as Plaintiffs wrongfully suggest, the Rule clarifies applications of the GCA in ways that are consistent with statutory text.  Plaintiffs fail to make the required clear and unequivocal showing that they are entitled to preliminary injunctive relief.  Plaintiffs lack standing and have not shown irreparable harm, they are not likely to succeed on the merits, and the balance of the equities weighs strongly against enjoining this public safety regulation.

## BACKGROUND

The Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.*, as amended by the Bipartisan Safer Communities Act of 2022, Pub. L. No. 117-159, 136 Stat. 1313, requires those "engage[d] in the business of . . . dealing in firearms" to obtain a federal license.  18 U.S.C. § 922(a)(1)(A).  When transferring firearms, federal firearms licensees (FFLs) generally must meet the transferee in person, verify the transferee's identity, and submit the transferee's information to the FBI's National Instant Background Check System (NICS), which will deny the transaction if the background check reveals that the transferee is prohibited from possessing or receiving the firearm.  *Id.* §§ 922(b)(5), (c), (t)(1).  FFLs also maintain records of acquisitions and dispositions of firearms, which enable tracing of firearms recovered from crime scenes through a process in which ATF queries records maintained by FFLs to trace the firearm to its first retail purchaser.  18 U.S.C. §§ 922(b)(5), 923(g)(1)(A); 27 C.F.R.

---

[1] Final Rule, *Definition of "Engaged in the Business" as a Dealer in Firearms*, 89 Fed. Reg. 28,968 (Apr. 19, 2024) ("Rule").

§§ 478.121-478.134.  These requirements serve the "twin goals" of "keep[ing] guns out of the hands of criminals and others who should not have them, and . . . assist[ing] law enforcement authorities in investigating serious crimes."  *Abramski v. United States*, 573 U.S. 169, 180 (2014).  Conversely, unlicensed dealing can allow criminals to obtain firearms and hinder tracing.

Congress first defined "engaged in the business" of dealing in firearms in 1986 as part of the Firearms Owners' Protection Act, Pub. L. No. 99-308, 100 Stat. 449 (1986).  In the BSCA, Congress expanded the GCA's definition to eliminate a requirement that a person have "the principal objective of livelihood and profit," replacing it with a required intent "to predominantly earn a profit."  136 Stat. at 1324-25, § 12002.  One of the events that prompted Congress to enact the BSCA was a mass shooting in Texas in which the shooter was denied a firearm by an FFL due to mental illness but then obtained the firearm he used in the shooting from an unlicensed dealer who did not conduct a background check.  *See* 89 Fed. Reg. at 28,971-72 & nn.26-29.

ATF promulgated the Rule to implement the BSCA and clarify the circumstances under which a person is engaged in the business of dealing in firearms.  Although Plaintiffs accuse ATF of "redefin[ing]" engaging in the business of dealing, Pls. Mem. in Support of Mot. for TRO & Preliminary Injunction 10, ECF No. 104 ("Mem."), the Rule actually sets forth a definition of engaging in the business of dealing that is substantively identical to the statutory definition:

| GCA, 18 U.S.C. § 921(a)(21)(C) | Rule, 89 Fed. Reg. at 29,091 |
|---|---|
| The term "engaged in the business" means— . . . as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms; | **§478.13 Definition of "engaged in the business as a dealer in firearms other than a gunsmith or a pawnbroker."** (a) *Definition.* A person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms.  The term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of the person's personal collection of firearms. |

The Rule also defines certain terms in the GCA and clarifies the application of the statutory standard in ways that are consistent with the statutory text.  For example, the Rule provides that

purchases and sales include exchanges for anything of value, not just cash, 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11, definitions of "purchase," "sale," and "something of value"), consistent with dictionary definitions and case law, *id.* at 28,974-75 & nn.49-56. The Rule provides that dealing activity is treated the same regardless of whether it occurs at a store, a gun show, online, or at any other location, *id.* at 29,090 (27 C.F.R. § 478.11, definition of "Dealer"), consistent with statutory text, case law, and ATF's longstanding interpretation, *id.* at 28,973-74 & nn.35-45.

The Rule defines "personal collection," which triggers an exclusion from the statute for certain activity that would otherwise qualify as engaging in the business of dealing, as including "[p]ersonal firearms that a person accumulates for study, comparison, exhibition . . . or for a hobby," but not including "any firearm purchased for the purpose of resale with the predominant intent to earn a profit" or "firearms accumulated primarily for personal protection." *Id.* at 29,090 (27 C.F.R. § 478.11). ATF explained that this definition is consistent with dictionary definitions and case law interpreting the term "collection" in the GCA. *Id.* at 28,980 & n.88; *id.* at 29,038 & nn.215-217.

The Rule provides that a "fact-specific inquiry" governs whether someone is engaged in the business, such that "there is no minimum number of transactions that determines whether a person is 'engaged in the business' of dealing in firearms." *Id.* at 29,091 (27 C.F.R. § 478.13(b)). Plaintiffs focus on language stating that "even a single firearm transaction or offer to engage in a transaction, when combined with other evidence (*e.g.,* where a person represents to others a willingness and ability to purchase more firearms for resale), may require a license." *Id.* Plaintiffs argue that this language suggests that ATF treats isolated firearms transactions as firearms dealing, but that provision clarifies that "a single isolated firearm transaction" is insufficient. *Id.* ATF explained that this provision was supported by case law upholding convictions for unlicensed dealing where the defendants held themselves out as firearms dealers and engaged in significant legwork to set up firearms businesses but were apprehended before few, if any, firearms sales were completed. *See id.* at 28,976 & n.67.

The Rule sets forth circumstances that give rise to rebuttable presumptions, applicable in civil and administrative proceedings (but not criminal proceedings), that a person is engaged in the business of dealing in firearms or has the predominant intent to earn a profit. *Id.* at 29,091 (27 C.F.R.

§ 478.13(c), (d)(2)).  ATF explained that case law and ATF's enforcement experience indicated that the activities set forth in the presumptions were generally indicative of engaging in the business or having the predominant intent to earn a profit.  *See id.* at 28,977-79 & nn.72, 74-84; *id.* at 28,981-82 & nn.97-103.  The Rule also sets forth types of conduct that do not support a presumption that a person is engaged in the business of dealing in firearms and can be used to rebut the Rule's presumptions.  *Id.* at 29,092 (27 C.F.R. § 478.13(e), (f)).

## LEGAL STANDARD

A movant seeking a preliminary injunction "must make a clear and unequivocal showing it is entitled to such relief."  *Colorado v. EPA*, 989 F.3d 874, 883 (10th Cir. 2021) (citation omitted).  "To obtain a preliminary injunction, the movant must show (1) it is substantially likely to succeed on the merits, (2) it will suffer irreparable injury if the injunction is denied, (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction, and (4) the injunction would not be adverse to the public interest."  *Id.* (citation omitted).  The same requirements apply to requests for "a stay of agency action under section 705 of the APA," *id.*, and temporary restraining orders, *Rangel-Lopez v. Cox*, 344 F. Supp. 3d 1285, 1289 (D. Kan. 2018).  The balance of harms and public interest factors merge when the government is the opposing party.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## ARGUMENT

### I.      Plaintiffs Lack Standing and Fail to Establish Irreparable Harm

Plaintiffs' demand for a preliminary injunction should be denied at the threshold because they fail to demonstrate that they have standing and will also suffer irreparable harm absent such relief.

#### A.      The State Plaintiffs Demonstrate Neither Standing Nor Irreparable Harm

Twenty states, led by Kansas, assert that they have standing to challenge the Rule because (1) they "have already lost (and will continue to lose) tax revenue under [the Rule]," and (2) the Rule "will impose additional administrative costs" related to federally mandated background checks.  Mem. 5, 7.  But neither of these asserted injuries is "concrete" and "imminent" enough to confer Article III standing, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), nor do they constitute irreparable

harm, *Colorado*, 989 F.3d at 884 ("[A] speculative or theoretical injury will not suffice.").

The States' first asserted injury hinges on there being (1) a decrease in the number of unlicensed firearms sellers at gun shows because of the Rule; (2) a corresponding decrease in table rentals, attendance, and firearms sales at such shows; and (3) ultimately, a reduction in sales tax revenues derived from gun shows.  Mem. 5-6; *see* Compl. ¶¶ 61-92, ECF No. 1.  But such incidental downstream effects of a federal policy on state tax revenues do not qualify as judicially cognizable injuries for purposes of standing.  Indeed, the Supreme Court long ago explained that a State may sue the federal government only if it has suffered a "*direct* injury" from federal action, and the Court rejected a theory of standing based on a federal policy's "remote and indirect" effects on a state's property tax base.  *Florida v. Mellon*, 273 U.S. 12, 17-18 (1927).  The Court reiterated this same principle just last year when it observed that because "federal policies frequently generate indirect effects on state revenues or state spending," a State's "claim for standing" when asserting such indirect effects "can become more attenuated."  *United States v. Texas*, 599 U.S. 670, 680 n.3 (2023).  "[T]he unavoidable economic repercussions of virtually all federal policies, and the nature of the federal union as embodying a division of national and state powers, suggest . . . that impairment of state tax revenues should not, in general, be recognized as sufficient injury-in-fact to support state standing."  *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012) (citation omitted).

In any event, the States' reduced-revenue theory fails on its own terms.  The States tie that injury in part to an expected, but uncertain, decrease in firearms sales (and sales taxes assessed) at gun shows.  *See, e.g.*, Fanning Decl. ¶ 8, ECF No. 104-9 ("*If* there is a decrease in firearm sales in Wyoming it will naturally result in a decrease in State excise tax revenue.") (emphasis added).  But this bare assumption rests on a flawed premise: Even if the Rule marginally reduces the number of *individuals* who sell firearms, *see* 89 Fed. Reg. at 29,072, that does not imply that the aggregate number of *firearms* sold in each state will decrease in equal measure, or even at all.  To the contrary, it is entirely possible, if not expected, that those wanting to purchase firearms will just go elsewhere, including to FFLs, to do so.  And that would mean that roughly the same number of firearms will be sold in the Plaintiff States under the Rule, just from a slightly smaller pool of sellers, such that no decrease in sales tax

revenues ever materializes. The Rule, in fact, contemplates this very outcome. *See id.* at 29,066 ("[T]he overall number of firearm transactions are unlikely to be affected [by the Rule].").

The States also tie their reduced-revenue injury to a decrease in taxes assessed on tables at gun shows and gun show admissions. Mem. 6. And two gun show promoters submitted declarations claiming that they recently cancelled gun shows in Tennessee because of the Rule. *See* Chipley Decl. ¶ 18, ECF No. 104-1; Kehrli Decl. ¶ 12, ECF No. 104-2. Any resulting revenue loss, however, is not fairly traceable to the Rule but rather to "independent" business decisions made by "some third party not before the court." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005) (citation omitted). That several other gun shows are still scheduled to take place in the Plaintiff States in the coming weeks undermines any suggestion that cancellations are an inevitable consequence of or reasonable response to the Rule. *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (explaining that plaintiffs "cannot manufacture standing merely by inflicting harm on themselves"). Relatedly, Plaintiffs offer no evidence indicating that, absent a complete cancellation, the decision by certain unlicensed vendors to not participate in a given gun show will necessarily result in lower sales tax revenues. Such vendors could be readily replaced by FFLs or other vendors unaffected by the Rule, and nothing mandates that those new vendors would sell fewer firearms or that gun show attendance would inevitably decline. And more generally, even assuming that *some* gun-show-related tax revenues might decline, there is no reason to doubt that the money that would have otherwise been spent at those shows will simply be spent on other taxable goods and services. Any overall loss of state tax revenues thus remains entirely speculative, further underscoring why courts have generally rejected standing based on the incidental revenue effects of a federal policy. *See Wyoming*, 674 F.3d at 1234.

The evidence the States offer is notable for what it fails to show.[2] It fails to show that any State has suffered a "specific loss" of gun-show-related tax revenues that is directly attributable to the

---

[2] The Plaintiffs' declarants' assertions that gun shows in Sparta, TN and Broken Arrow, OK were also cancelled because of the Rule is quintessential hearsay that the Court need not credit. *See Farm Bureau Prop. & Cas. Ins. Co. v. Biggs*, No. 2:20-cv-2558, 2021 WL 1348317, at *4 (D. Kan. Feb. 25, 2021). And even assuming the cancelled Hamilton, MT gun show, Mem. 6, caused some loss of revenue— Plaintiffs fail to allege in their Complaint whether or how Montana even taxes such shows, *see* Compl.

Rule (as opposed to a promoter's decision to cancel a show). *Wyoming*, 674 F.3d at 1235. And the States' "assertions of future lost tax revenues are merely speculative." *Id.* For example, the claim that "the great majority" of unlicensed firearms sellers "are scared to death" of the Rule, Chipley Decl. ¶ 12, is the epitome of "rhetorical exaggeration." *Wyoming*, 674 F.3d at 1236 (citation omitted). The States assert that the Rule has reduced "the number of unlicensed sellers at gun shows . . . by an estimated 30-40%," Chipley Decl. ¶ 14; *see* Mem. 6, but they provide no basis for extrapolating that figure to other gun shows in other states organized by promoters other than their two declarants. This reduced-revenue theory is too "conjectural" and "hypothetical" to satisfy Article III, *Susan B. Anthony List*, 573 U.S. at 158, or to constitute irreparable harm, *see Colorado*, 989 F.3d at 884.

Tennessee's and New Hampshire's second asserted injury—that the Rule will impose "additional administrative costs" related to federally mandated background checks these States conduct themselves—likewise fails to confer standing for several reasons. First, the expected increase in the number of private firearms sellers obtaining licenses is caused by the *statutory* broadening of the definition of being "engaged in the business," meaning that any corresponding increase in background checks is traceable to the BSCA—which Plaintiffs do not challenge—rather than the Rule. Second, any attendant increase in administrative costs would result from a state's voluntary decision to conduct background checks itself, which federal law does not require. *See Colorado*, 989 F.3d at 888 (explaining that an injury stemming from a state's "legislative decision" was "self-inflicted" and thus "not legally cognizable" for standing purposes). And third, the States offer nothing beyond "conclusory statements" in a two-page declaration to evidence any additional administrative costs. *Wyoming*, 674 F.3d at 1233-34 (finding no standing). Such assertions of "*possible* future injury" fail to establish standing, *Clapper*, 568 U.S. at 409 (citation omitted), or irreparable harm, *see Colorado*, 989 F.3d at 884.

### B.   The Individual Plaintiffs Lack Standing to Bring a Pre-Enforcement Challenge and Fail to Show Irreparable Harm

Plaintiffs Journey, Black, and Maxey base their standing to sue on their subjective fear that

---

¶¶ 60-92—that loss, like the two Tennessee shows, is attributable to the decision to cancel the show entirely and not the Rule.

there is a "realistic danger" they will be "subject to penalties" under the Rule for firearms-related conduct that they "regularly (and legally) engage in."  Mem. 7-8.  To bring such a pre-enforcement challenge, however, the individual plaintiffs must establish that they "intend[] to engage in conduct that violate[s]" the Rule and "face[] a credible threat of prosecution as a result."  *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 546 (10th Cir. 2016); *see Susan B. Anthony List*, 573 U.S. at 158-59; *FDA v. All. for Hippocratic Med.*, No. 23-235, slip op. at 8 (U.S. June 13, 2024) ("the injury must have already occurred or be likely to occur soon").  And they fall well short of satisfying this standard.

The individual Plaintiffs would be subject to the Rule only if their firearms-related conduct amounts to being "engaged in the business" of dealing firearms.  Per their declarations, Journey and Black are "firearms hobbyist[s] and enthusiast[s]" who each maintain a large "personal collection of firearms"; attend between three and five gun shows per year; and buy and sell firearms at those shows to "enhance" or "expand" their collections.  Journey Decl. ¶¶ 3-4, ECF No. 104-4; Black Decl. ¶¶ 3-5, ECF No. 104-5.[3]  But to the extent Journey sells firearms to acquire ones he finds "particularly interesting in terms of history, design and craftmanship," Journey Decl. ¶ 4, the Rule excludes such occasional sales for the enhancement of a "personal collection."  89 Fed. Reg. at 29,092; *see id.* at 29,090 (defining "personal collection" to include firearms "accumulate[d] for study, comparison, [and] exhibition").  And Journey's and Black's occasional sales of self-defense firearms likewise do not constitute being "engaged in the business" because neither plaintiff further indicates that he "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business" and makes such sales with the predominant intent to "earn a profit."  *Id.* at 29,091; *see* Journey Decl. ¶ 5 (disclaiming profit as the "predominant purpose in collecting").  Both plaintiffs thus fail to establish that their conduct is even "arguably proscribed" by the Rule, making any "fear of future enforcement . . . wholly speculative."  *Susan B. Anthony List*, 573 U.S. at 160, 163.

The individual plaintiffs suggest they have standing simply because they "believe[]" the Rule

---

[3] Maxey does not assert that he sells firearms.  *See* Maxey Decl. ¶ 4, ECF No. 104-6 ("At those gun shows I buy firearms to add to my personal collection.").  Any risk of future enforcement against him of a Rule that defines "engag[ing] in the business" of *firearms dealing* is thus nonexistent.

"applies to [them]" and will consequently "stop buying and selling firearms altogether." Mem. 8. But they cannot "manufacture standing merely by inflicting harm on themselves" based solely on their "subjective fear" of the Rule. *Clapper*, 568 U.S. at 416, 418. Separately, even if Journey and Black stop selling firearms because of the Rule, that "harm" is only temporary; if the Rule were later held invalid, the two would be able to complete any foregone sales, just "at a later date" following the "ordinary course of litigation"—which is the opposite of irreparable. *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

### C.      Chisholm Trail Also Lacks Standing and Fails to Show Irreparable Harm

Chisholm Trail likewise lacks standing. Chisholm Trail cannot base its standing on Black and Maxey, Mem. 9, because they lack standing. *See Colo. Outfitters Ass'n*, 823 F.3d at 550. And Chisholm Trail's assertions that the Rule will harm it directly by reducing revenue the organization earns from its gun shows are too speculative to confer standing. *See Wyoming*, 674 F.3d at 1235. Chisholm Trail offers no evidence indicating (1) how many vendors at its gun shows are unlicensed and what proportion of the revenue those vendors generate; (2) whether any vendors have signaled that they will not participate in Chisholm Trail's shows because of the Rule; (3) whether vendors who elect not to participate can be replaced (by FFLs or vendors unaffected by the Rule); and (4) whether, at the end of this chain of contingencies, Chisholm Trail will actually lose revenue. Any such revenue loss also does not amount to irreparable harm. Chisholm Trail's next gun show is scheduled for October 2024.[4] Accordingly, since it is not clear that any harm is "likely to occur before [the Court] rules on the merits, there is no need for preliminary relief" here. *Colorado*, 989 F.3d at 884 (citation omitted).

## II.      Plaintiffs Are Not Substantially Likely to Succeed on the Merits

### A.      Defendants Have Authority to Promulgate the Rule

Plaintiffs contend that ATF has "no statutory authority to redefine terms or create rebuttable presumptions" because "Congress[] intentionally limited [ATF's] authority to 'only . . . necessary' rules and regulations." Mem. 10. Yet in vesting in the Attorney General, and by delegation ATF, authority to prescribe "such rules and regulations as are necessary to carry out the provisions" of the GCA, 18

---

[4] *See* Chisholm Trail Antique Gun Association, https://www.ctaga.com/gun-show (last visited June 13, 2024).

U.S.C. § 926(a), the GCA "almost inevitably confers some measure of discretion to determine what regulations are in fact 'necessary.'" *NRA v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990). In *Brady*, the court approved as "necessary" ATF regulations defining terms in the GCA. *See id.* at 480-81 (upholding ATF regulations defining "business premises" and "gun show or event"). Thus, ATF has authority to engage in necessary rulemaking, including by defining statutory terms.

Plaintiffs also assert without explanation that the "changed definitions" in the Rule are not necessary, including "carv[ing] out 'personal protection' firearms." Mem. 11. But ATF explained at length that the Rule was necessary to provide "clarity" regarding when a federal firearms license was required and to "deter[]" unlawful unlicensed dealing, 88 Fed. Reg. 61,993, 61,996 (Sept. 8, 2023), given that "ATF observed a significant level of noncompliance with the GCA's licensing requirements even prior to the BSCA," 89 Fed. Reg. at 29,086. And ATF further determined that the Rule would "improve public safety by helping to prevent persons who are prohibited from possessing firearms under Federal law from acquiring firearms and allowing law enforcement officers to trace firearms involved in crime." *Id.* at 28,987. These are unquestionably valid regulatory objectives that justified providing further clarity regarding the operation of statutory terms. *Brady*, 914 F.2d at 479; *see also infra*, p. 17. ATF also explained in detail why including weapons accumulated primarily for personal protection in the definition of personal collection would contradict statutory text and allow a limited statutory exception to swallow the statutory rule. *See* 89 Fed. Reg. at 29,039-39. To be sure, an agency may not "redefine" a statutory term inconsistently with unambiguous statutory text, *see* Mem. 11, but that does not mean an agency cannot exercise its authority in a manner *consistent* with the text.

Plaintiffs also argue that ATF "is not authorized to promulgate rules to define any statutory terms" because "section 921(a) grants the Director rulemaking authority to define only the term 'curios and relics.'" Mem. 11. Plaintiffs argue that the "express grant of authority" to define the single term in § 921(a) "strongly suggests Congress withheld that same authority for other terms." *Id.* But Plaintiffs' premise is mistaken. Section 921(a)(13) states that ATF *must* use its rulemaking authority to define "curios or relics." 18 U.S.C. § 921(a)(13) ("curios or relics, as the Attorney General *shall* by regulation define . . . .") (emphasis added). "It is a basic canon of statutory construction that use of

the word shall indicates a mandatory intent." *Jewell v. United States,* 749 F.3d 1295, 1298 (10th Cir. 2014) (citation omitted). Therefore, the *expressio unius* canon suggests, at most, that ATF is not *required* to define other terms, not that it is *prohibited* from exercising its authority under § 926 to do so.

Plaintiffs also contend, again without explanation, that ATF lacks authority to create "presumptions as to whether someone is 'engaged in the business.'" Mem. 11. The Supreme Court has long recognized the validity of regulatory presumptions, and decades of precedent across the country have followed. *Republic Aviation Corp. v. NLRB,* 324 U.S. 793, 804-05 (1945)) (for "a statutory presumption or one established by regulation, the validity . . . depends upon the rationality between what is proved and what is inferred."). ATF, like any other federal agency, has general authority to promulgate regulations to effectuate its administration of the statutes it is charged with administering. Such regulations can include presumptions when such presumptions establish a rational nexus between the facts found and the facts to be presumed. *U.S. Steel Corp. v. Astrue,* 495 F.3d 1272, 1284 (11th Cir. 2007) ("Preliminarily, administrative agencies may establish presumptions, as long as there is a rational nexus between the proven facts and the presumed facts." (citation omitted)).[5] The creation of presumptions is an *inherent* power of an agency authorized to issue regulations or conduct adjudications and to administer a statute, regardless of whether the particular statute explicitly addresses presumptions. Moreover, "in challenging the validity of [a] regulatory presumption . . . [the Plaintiff] bears the heavy burden of demonstrating that there is no rational connection between the fact proved and the ultimate fact to be presumed." *Cole,* 33 F.3d at 1267.

Plaintiffs confuse the issues by pointing out that the GCA is a criminal statute. Mem. 12. They appear to be arguing that because the statute has criminal elements, and because an agency interpretation of a criminal statute is not entitled to deference, the GCA cannot abide presumptions,

---

[5] *See also, e.g., USX Corp. v. Barnhart,* 395 F.3d 161, 171 (3d Cir. 2004) ("Presumptions may, of course, be established both by legislative bodies and by administrative agencies, but their validity depends as a general rule upon a rational nexus between the proven facts and the presumed facts." (citation omitted)); *Cole v. USDA,* 33 F.3d 1263, 1267 (11th Cir. 1994) ("The law is well established that presumptions may be established by administrative agencies, as long as there is a rational nexus between the proven facts and the presumed facts."); *Holland Livestock Ranch v. United States,* 655 F.2d 1002, 1005 (9th Cir. 1981) ("Administrative agencies are entitled to create evidentiary presumptions.").

even those applicable only to civil and administrative proceedings.  *Id.*  This argument makes no sense. As noted above, promulgating presumptions is an inherent aspect of an agency's power to administer a statute.   The presumptions simply provide rules about burdens of production in civil and administrative proceedings.  89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(c)) (clearly stating that the presumptions do not apply to criminal proceedings).  Those presumptions do not alter the meaning of the statute or the burden of proof applicable in the proceedings where they apply, and each is based on existing precedent, ATF's enforcement experience, statutory interpretation, and common sense.[6] Indeed, Plaintiffs do not even challenge the rational nexus underlying any of the Rule's specific presumptions, and therefore have failed to carry their burden to invalidate them.  Nor is there anything infirm in the Rule's unremarkable observation that the presumptions might nevertheless be "useful" to a criminal court.  *See id.* at 28,976 n.66 (explaining that courts may use permissive inferences in jury instructions); *see also, e.g., Welch v. City of Pratt,* 214 F.3d 1219, 1224-25 (10th Cir. 2000) (permissive presumptions are not constitutionally suspect in criminal jury instructions).

## B.    The Rule Is Consistent with the Text of the GCA

Plaintiffs make three arguments, derived from a recent TRO order in Texas,[7] that the Rule misconstrues the GCA, but those arguments are incorrect.  First, Plaintiffs argue that the Rule improperly permits enforcement on the basis of a single (or even no) firearm sale.  Mem. 12.  Contrary to Plaintiffs' contention, the Rule does not state that a single transaction or offer to transact, without other evidence, can satisfy the definition.  *See* 89 Fed. Reg. at 29,091.  But more importantly, the statutory definition requires that a person intend to profit by engaging in the repetitive purchase and resale of firearms.   Section 921(a)(22) makes clear that "to predominantly earn a profit" in

---

[6] *See, e.g.,* Rule, 89 Fed. Reg. 28,977-78; *id.* at nn.73-77, 79; *id.* at 29,030 (supporting the Rule's presumption that a person repeatedly purchasing or reselling firearms or through unlawful methods, 27 C.F.R. § 478.13(c)(2), is engaged in the business of dealing); *id.* at 28,981-82, n.100; *id.* at 29,049 (supporting the Rule's presumption that a person securing financial services for the purpose of accepting repetitive payments for firearms transactions, 27 C.F.R. § 478.13(d)(2)(iv), is intending to predominantly earn a profit from the sale of firearms).

[7] The Texas court echoed its merits analysis in an opinion granting a preliminary injunction.  Mem. Op. & Order, *Texas v. ATF,* 2:24-cv-89, ECF No. 70 (N.D. Tex. June 11, 2024).  For the reasons explained here, Defendants disagree with both the TRO and preliminary injunction opinions.

§ 921(a)(21)(C) concerns the "intent underlying" firearms dealing and not actual sales or profit.  Thus § 921(a)(21)(C) is properly understood as encompassing individuals who "devote[] time, attention, and labor" to dealing in firearms with the predominant intent to "earn a profit *through* the repetitive purchase and resale of firearms." (emphasis added).  Thus, courts have long recognized that engaging in the business of dealing does not require multiple successful sales.  *See* 89 Fed. Reg. at 28,976; *id.* at nn.67-68 (collecting cases); *see*, *e.g.*, *United States v. King,* 735 F.3d 1098, 1107 n.8 (9th Cir. 2013).

Second, Plaintiffs contend that ATF lacks authority to define "personal collection" and the Rule's definition undermines the GCA's safe harbor by excluding firearms accumulated primarily for personal protection.  Mem. 13.  As explained *supra*, pp. 9-11, ATF's authority to enact necessary regulations includes the authority to define statutory terms.  The Rule's definition is well supported by a common-sense understanding of the statute and the generally accepted definition of a "collection."  The Rule defines personal collection as the "[p]ersonal firearms that a person accumulates for study, comparison, exhibition . . . or for a hobby."  89 Fed. Reg. 29,090 (27 C.F.R. § 478.11).  ATF explains that the "definition is from standard dictionary definitions" of the term "collection," which means "an accumulation of objects gathered for study, comparison, or exhibition or as a hobby."  *Id.* at 29,038; *id.* at n.216 (citing two dictionary definitions of "collection").  Moreover, the definition "is consistent with how the GCA views a 'collection,'" as the statute "defines the term 'collector' as 'any person who acquires, holds, or disposes of firearms as curios or relics,'" and ATF regulations (at the direction of Congress) have long further defined "curios or relics" as "'[f]irearms which are of special interest to collectors by reason of some quality other than is associated with firearms intended . . . as offensive or defensive weapons.'"  *Id.* (quoting 18 U.S.C. § 921(a)(13); 27 C.F.R. § 478.11).  Finally, the Rule cites case law similarly reading "collection" narrowly.  *Id.* at n.217.

Instead of addressing the validity of the definition, Plaintiffs contend that excluding "firearms accumulated primarily for personal protection" from the definition of personal collection violates a Second Amendment right to acquire firearms for personal defense and will exclude "every functioning firearm in the country."  Mem. 13.  This argument both misunderstands the Rule and flips the statutory definition on its head.  It is the intent for which a firearm was obtained, and not the functionality of

the firearm, that determines whether it is part of a personal collection.  Plaintiffs' disagreement is with the terms used in the statute not the Rule.  As for the safe harbor, it is a limited *exception* to the general prohibition on unlicensed dealing in firearms.  "[I]ncluding all firearms usable for self-defense in the definition of 'personal collection' is inconsistent with the statutory scheme" and would "allow the limited definitional exclusion for enhancing and liquidating a personal collection to swallow the rule . . . because one could nearly always claim that a firearm was purchased or sold to improve or liquidate the firearms one keeps for self-defense."  89 Fed. Reg. 29,038-39; *see also, e.g., Pugin v. Garland*, 599 U.S. 600, 607 (2023) (courts "should not lightly conclude that Congress enacted a self-defeating statute." (citation omitted)).

Nor is there any genuine Second Amendment concern with this exclusion.  The definition itself has no bearing on any person's ability to purchase or sell firearms for personal protection; it simply means "persons who buy or sell such firearms cannot avail themselves of the statutory exception for personal collections" for those firearms.  89 Fed. Reg. 29,039; *see id.* at 29,090 ("nothing in this definition shall be construed as precluding a person from lawfully acquiring firearms for self-protection or other lawful personal use.").

Third, Plaintiffs argue that the Rule conflicts with the GCA because the statute requires that a dealer obtain actual profit from dealing in firearms.  Mem. 13-14.  Specifically, they contend that 18 U.S.C. § 921(a)(22) creates a negative corollary that actual profit is required in all circumstances with the exception of dealing in firearms "for criminal purposes or terrorism" where proof of actual profit is explicitly not required.  But Plaintiffs' proposed reading contradicts the clear language in § 921(a)(22) that "to predominantly earn a profit" refers to "the intent underlying the sale or disposition of firearms," violating the principle that courts should "fit, if possible, all parts [of a statute] into a harmonious whole." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959)).  In contrast to Plaintiffs' internally contradictory construction, the Rule's construction of this provision harmonizes its language as signifying that a

predominant intent to profit is generally required, but such intent is not required when the purpose of firearms transactions is crime or terrorism.  *See* 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(d)).[8]

### C.    The Rule Does Not Implicate the Major Questions Doctrine

Plaintiffs argue that the Rule violates the major questions doctrine because it "impose[s] universal background checks." Mem. 14-15.  This premise is mistaken.  The Rule explicitly states that it does not impose universal background checks, *see* 89 Fed. Reg. at 28,987, as Plaintiffs elsewhere acknowledge, Mem. 19.  The Rule sets forth the same standard for engaging in the business as the GCA.  *See supra*, p. 2.  Dealing activity that falls short of that standard does not require licensing or background checks.  *See* 89 Fed. Reg. at 29,091-92.  As the Tenth Circuit has explained, the major questions doctrine "typically applie[s] . . . where an 'agency claim[s] to discover' regulatory authority for the first time 'in a long-extant statute.'" *Bradford v. DOL*, 101 F.4th 707, 727 (10th Cir. 2024) (quoting *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014)).  Here, ATF has regulated firearms dealing for decades, many of the Rule's provisions derive from case law generated by past enforcement actions, and this Rule implements a recent law expanding the licensing requirement.

### D.    The Rule Is Not Unconstitutionally Vague

Plaintiffs cannot show that the Rule is unconstitutionally vague.  Far from being vague, the Rule clarifies how the statutory standard for engaging in the business of dealing applies in various circumstances.  Plaintiffs bring a facial vagueness challenge, but a litigant "cannot" challenge an enactment as void for vagueness "on its face . . . except in those *rare* instances where" it "is so totally vague as to proscribe no comprehensible course of conduct at all." *United States v. Morales-Lopez*, 92 F.4th 936, 941-42 (10th Cir. 2024) (cleaned up).  Plaintiffs do not even attempt to meet this standard.  Instead, they describe three purported "sources of vagueness" in the Rule, Mem. 15, but even the

---

[8] Plaintiffs' reading of "to predominantly earn a profit" conflicts not only with clear statutory text, but also with the BSCA's purposes. In the BSCA, Congress replaced the phrase "with the principal objective of livelihood and profit" with "to predominantly earn a profit," to *broaden* the definition of engaged in the business by replacing one intent requirement with a broader intent requirement that did not include an intent to earn a "livelihood."  *See* 89 Fed. Reg. at 28,972 & nn.30-31 (discussing BSCA's legislative history).  Yet Plaintiffs implausibly interpret the BSCA as *narrowing* the definition by introducing a new requirement of actual profit.

presence of "some arguably vague elements" does not make a rule "vague on its face in violation of the" Due Process Clause. *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1180 (10th Cir. 2009).

In any event, Plaintiffs are incorrect about the purported sources of vagueness. Plaintiffs argue that the exclusion of "firearms accumulated primarily for personal protection" from the definition of "personal collection," 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11), is vague, Mem. 15-16, but this provision sets forth a clear standard:  If a person's primary purpose for accumulating a firearm is personal protection, it is not part of a personal collection. By contrast, if the primary purpose for accumulating the firearm is "study, comparison, exhibition . . . or for a hobby," 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11), then it is part of a personal collection. Plaintiffs also argue that the Rule is vague because it provides that "[T]here is no minimum number of transactions that determines whether a person is 'engaged in the business' of dealing in firearms." Mem. 16 (quoting 89 Fed. Reg. at 29,091 (27 C.F.R. § 478.13(b)). But that provision reflects the GCA, which does not define engaging in the business by number of transactions. *See* 89 Fed. Reg. at 28,976, 29,086. The statute may have been simpler to apply if Congress had adopted a mechanical numerical test, "[b]ut the 'Constitution does not . . . impose impossible standards of specificity, and courts should remain ever mindful that general statements of the law are not inherently incapable of giving fair and clear warning.'" *StreetMediaGroup, LLC v. Stockinger*, 79 F.4th 1243, 1253 (10th Cir. 2023) (*Sperry v. McKune*, 445 F.3d 1268, 1271 (10th Cir. 2006)).[9] Finally, simply saying that the Rule has "Byzantine complexity," Mem. 17, cannot satisfy Plaintiffs' heavy burden of showing unconstitutional vagueness.[10]

### E.    The Rule Is Not Arbitrary And Capricious

Review under the arbitrary and capricious standard is "very deferential," and "[c]ourts cannot second guess an agency's rulemaking decision when it provided reasons for its chosen course of

---

[9] Courts regularly uphold general standards against vagueness challenges. *See, e.g., Cox v. Louisiana*, 379 U.S. 559, 568 (1965) ("near" a courthouse); *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 31-33 (1963) ("unreasonably low prices"); *United States v. Platte*, 401 F.3d 1176, 1189-90 (10th Cir. 2005) ("national defense").

[10] The only example Plaintiffs provide of such complexity is the definition of personal collection. Mem. 17 n.19. As explained above, that definition is not unconstitutionally vague.

action." *N.M. Health Connections v. HHS*, 946 F.3d 1138, 1162, 1167 (10th Cir. 2019) (cleaned up). Plaintiffs' argument that ATF did not adequately explain why it enacted the Rule, Mem. 17-18, ignores the extensive explanation in the Rule itself. ATF explained that it had observed "significant . . . noncompliance" with the GCA, 89 Fed. Reg. at 29,086, and the Rule would "provide clarity" regarding application of the GCA, *id.* at 28,968, and "increase compliance" with the GCA, *id.* at 28,994, which would significantly enhance public safety by leading to background checks that could be used to deny firearms to dangerous people and improving crime gun tracing, *id.* at 28,993-95.[11]  A rule is not arbitrary and capricious when the agency explains why the rule promotes the valid objective of "public safety." *Licon v. Ledezma*, 638 F.3d 1303, 1310-11 (10th Cir. 2011).

Plaintiffs' other arguments also fail. The Rule's definition of "personal collection" did not come from "thin air," Mem. 17, as Plaintiffs assert. ATF explained that the definition was supported by dictionary definitions, case law, statutory text, and ordinary meaning. 89 Fed. Reg. at 28,980 & n.88; *id.* at 29,037-39 & nn.215-217. Plaintiffs are also incorrect to say that the Rule "mostly targets gun shows." Mem. 18. The Rule clarifies that dealing activity is treated the same whether it occurs at a gun show or anywhere else. *See* 89 Fed. Reg. at 29,090 (27 C.F.R. § 478.11, definition of "dealer"); *see also id.* at 28,973-74 (explaining that this clarification is consistent with longstanding ATF practice).

## F.       The Rule Comports with the Second Amendment

The Second Amendment protects a right to "keep and bear arms," U.S. Const. amend. II, but it does not prohibit "laws imposing conditions and qualifications on the commercial sale of arms," which are "presumptively lawful," *District of Columbia v. Heller*, 554 U.S. 570, 626-27 & n.26 (2008). The Tenth Circuit has held that it is "bound by" *Heller*'s articulation of limitations of the Second Amendment. *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015). Accordingly, the Tenth Circuit has blessed other "presumptively lawful" laws identified in *Heller*: laws forbidding carrying weapons in government buildings, *Bonidy*, 790 F.3d at 1125, and felon-in-possession laws, *Vincent v. Garland*, 80 F.4th 1197, 1201 (10th Cir. 2023). The Supreme Court clarified *Heller*'s holding in *New*

---

[11] *See also id.* at 28,990-29,067 (responses to comments criticizing the Rule); *id.* at 29,071-86 (cost-benefit analysis of Rule); *id.* at 29,086-87 (explaining why ATF rejected certain alternatives).

*York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), but *Bruen* "did nothing to disturb th[e] part of *Heller*" finding that regulations of commercial firearms sales are presumptively lawful. *McRorey v. Garland*, 99 F.4th 831, 836 (5th Cir. 2024). To the contrary, *Bruen* "approved the constitutionality" of "'shall-issue' licensing regimes" requiring a "criminal background check[]" before obtaining a "permit[]" to carry firearms. *Vincent*, 80 F.4th at 1201-02 (citing *Bruen*, 597 U.S. at 38 n.9). If it is permissible to require a license to *bear* arms, a right listed in the Second Amendment, there is no reason that it would violate the Second Amendment to require a license to *deal* firearms, an activity not mentioned in the amendment's text. *See McRorey*, 99 F.4th at 536-37 (Supreme Court has "continued to distinguish the treatment of prohibitions on 'keep[ing] and bear[ing]'" from "other ancillary firearm regulations such as background checks preceding sale"); *see also* 89 Fed. Reg. at 29,002 (citing cases holding that regulations on firearms sales do not violate the Second Amendment).

Moreover, the GCA's common-sense licensing requirements implemented by the Rule are "consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. As ATF explained in the Rule's preamble, "there is a robust historical tradition supporting the Government's authority to require licenses and inspection of firearms sellers." 89 Fed. Reg. at 29,002. Examples cited in the Rule include laws requiring licenses and inspections to sell gunpowder, restrictions on exports of arms, and restrictions on selling firearms to those believed to be dangerous. *Id.* at 29,002-03. Plaintiffs argue that historical laws did not regulate commercial firearms sales in precisely the same way as the Rule does, Mem. 17-18, but a "historical twin" or "dead ringer" is not required; a "historical analogue" is sufficient. *Bruen*, 597 U.S. at 30.

## III.   The Balance of Equities and Public Interest Weigh Against Preliminary Relief

The balance of equities tips decidedly against preliminarily enjoining the regulation. Plaintiffs bear the burden of establishing each of the preliminary injunction factors, and they have not demonstrated that their "right to relief [is] clear and unequivocal" in this case. *Sierra Club, Inc. v. Bostick,* 539 F. App'x 885, 888-89 (10th Cir. 2013) (citation omitted). Plaintiffs have not established any harm to themselves in allowing the Rule to take effect or any public benefit from enjoining the Rule.

Plaintiffs cannot circumvent these failures by claiming risks to their constitutional rights since they cannot establish a likelihood of success on those grounds. *See, e.g., Sheldon v. BOP*, No. 23-cv-00273, 2024 U.S. Dist. LEXIS 21698, at *14 (D. Colo. Feb. 7, 2024). Nor, as Plaintiffs claim, Mem. 19, does the Rule actually change the statutory scheme or attach liability to any conduct that is lawful under the statute. *See supra*, pp. 12-15. There is no status quo to preserve because the BSCA expanded the universe of regulated people. Consequently, Plaintiffs have placed nothing on their side of the balance.

Conversely, ATF has exercised its authority to issue regulations to effectuate laws enacted by Congress to reduce violent crime. Congress specifically amended the definition of "engaged in the business" to encompass more conduct and to reduce the volume of unlicensed dealing in firearms. Under such circumstances, if the government "is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). Moreover, regulating "dealers in firearms" is "undeniably of central importance to federal efforts to prevent violent crime and to assist the States in regulating the firearms traffic within their borders." *United States v. Biswell*, 406 U.S. 311, 315 (1972); *see also United States v. Hosford*, 82 F. Supp. 3d 660, 667 (D. Md. 2015) ("[R]egulating firearms dealers . . . furthers the Government's substantial interest in protecting the community."). Therefore, granting preliminary relief would significantly harm the government's interest in law enforcement and public safety, and the balance tips decidedly against granting an injunction.

## IV.    Any Relief Should Be Limited

In the event the Court awards any relief, such relief should be no broader than necessary to remedy any demonstrated harms of any Plaintiffs found to have shown standing and irreparable harm. "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), and "Article III does not give federal courts the power to order relief to any uninjured plaintiff." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citation omitted).

In particular, the Court should not order universal relief that prevents Defendants from implementing the Rule nationwide. Plaintiffs cite D.C. Circuit case law approving of universal

remedies, but in the Tenth Circuit, "[i]t is well settled an injunction must be narrowly tailored to remedy the harm shown." *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir. 2002). A "universal injunction" would "def[y] . . . foundational principles" that "a federal court may not issue an equitable remedy 'more burdensome to the defendant than necessary to [redress]' the plaintiff's injuries." *Labrador v. Poe ex. rel Poe*, 144 S. Ct. 921, 923 (2024) (Gorsuch, J., joined by Thomas, J., and Alito, J., concurring in the grant of the stay) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). Moreover, nationwide injunctions "short-circuit the decisionmaking benefits of having different courts weigh in on vexing questions of law and allowing the best ideas to percolate to the top," and "sometimes give States victories they do not want," *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring), concerns especially salient here given that multiple challenges to the Rule are pending in other courts,[12] and many states support the Rule.[13] Plaintiffs' invocation of Section 705 of the APA does not support a universal remedy because that statute instructs courts to grant relief "to the extent necessary to prevent irreparable injury," 5 U.S.C. § 705, and the House Report for the APA indicates that relief under § 705 should "normally, if not always, be limited to the parties complainant." *Administrative Procedure Act*, S. Doc. No. 248, 79th Cong., 2d Sess. 277 (1946).

If the Court concludes that Plaintiffs are likely to succeed in showing that only certain provisions or aspects of the Rule are unlawful, the Court should limit relief to those provisions or aspects, to effectuate the Rule's "[s]everability" section. 89 Fed. Reg. at 29,070; *see New Mexico v. Dep't of Interior*, 854 F.3d 1207, 1233 (10th Cir. 2017) ("A severability clause creates a presumption" that an enactment is intended to be severable). Thus, any "objectionable provision[s]" should be temporarily enjoined while the others remain in place. *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686 (1987).

## CONCLUSION

The Court should deny Plaintiffs' Motion for TRO and Preliminary Injunction.

---

[12] *Texas v. ATF*, Case No. 2:24-cv-89 (N.D. Tex.); *Florida v. ATF*, Case No. 8:24-cv-1041 (M.D. Fla.).
[13] Comment of Attorney General of New York, et al., Definition of "Engaged in the Business" as a Dealer in Firearms, Docket No. ATF 2022R-17 (Dec. 7, 2023), https://ag.ny.gov/sites/default/files/letters/multistate-comment-on-nprm-eitb-atf-rule.pdf (comment of 20 states and the District of Columbia supporting the Rule).

Dated: June 14, 2024

Respectfully submitted,


BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/  Jeremy S.B. Newman*
JEREMY S.B. NEWMAN
KERI L. BERMAN
ZACHARY W. SHERWOOD
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 532-3114
Fax: (202) 616-8470
Email:  jeremy.s.newman@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that on this the 14th day of June, 2024, this document was electronically filed with the Clerk of the Court by using the CM/ECF system.

*/s/ Jeremy S.B. Newman*
Jeremy S.B. Newman