**In the United States District Court
for the District of Kansas**

———————

Case No. 24-cv-01086-TC-TJJ

———————

STATE OF KANSAS, ET AL.,

*Plaintiffs*

v.

MERRICK GARLAND, ET AL.,

*Defendants*

———————

**MEMORANDUM AND ORDER**

Two dozen plaintiffs sought a sweeping injunction against a rule promulgated by the Bureau of Alcohol, Tobacco, Firearms and Explosives in the Eastern District of Arkansas. Doc. 4. By the time the case was transferred to the District of Kansas, the rule was already in effect. Doc. 103; Doc. 104. Because Plaintiffs have not shown that they are substantially likely to succeed on the merits, their motion is denied.

**I**

**A**

A preliminary injunction is an extraordinary remedy, with "the limited purpose … to preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation and quotation marks omitted). Rule 65 of the Federal Rules of Civil Procedure permits a court to issue preliminary injunctions in limited circumstances. The party seeking a preliminary injunction must establish four things: that "they are substantially likely to succeed on the merits of their claims," "they will suffer irreparable harm if the injunction is denied," "their threatened injury without the injunction outweighs any harm to the party opposing the injunction," and "the injunction, if issued, is not adverse to the public

1

interest." *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018)).

A preliminary injunction is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Even a standard preliminary injunction—one that simply preserves the position of the parties pending trial—is extraordinary. *Id.* Those seeking to mandate specific action rather than prohibit it, change the status quo, or grant all the relief a victorious movant could obtain at trial are even more disfavored. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019). Movants seeking a disfavored injunction must make a strong showing of likely success on the merits and a balance of harms that tilts in their favor. *Id.*; *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). This heightened standard applies "[b]ecause the primary goal of a preliminary injunction is to preserve the pre-trial status quo." *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). In applying that standard, courts "aim … to minimize any injury that would not have occurred but for the court's intervention." *Id.*

**B**

Plaintiffs sue over a final administrative rule that purports to interpret several federal firearms statutes. Those statutes, the Final Rule, and Plaintiffs' suit are discussed in turn.

**1**

Gun ownership and gun regulation have been a critical part of America since its founding. *Staples v. United States*, 511 U.S. 600, 610 (1994); *see also United States v. Rahimi*, 602 U.S. ----, No. 22-915, 2024 WL 3074728, at *5 (U.S. June 21, 2024); Akhil Reed Amar, The Bill of Rights: Creation and Reconstruction 46–59 (1998). Congress has expanded and contracted federal firearms restrictions for many decades by editing definitions and adjusting statutory requirements. *See Bryan v. United States*, 524 U.S. 184, 186–89 (1998) (explaining how certain federal gun control provisions evolved); David T. Hardy, *The Firearms Owners' Protection Act: A Historical and Legal Perspective*, 17 Cumb. L. Rev. 585, 585–88 (1987) (same). Only a small slice of these restrictions is relevant to the parties' current dispute.

Generally speaking, "person[s] engage[d] in the business of importing, manufacturing, or dealing in firearms" must obtain licenses,

among other things. 18 U.S.C. § 923. If they do not, they risk violating various gun trafficking statutes. 18 U.S.C. §§ 922(a)(1)(A), 923(a).

So putative firearms dealers must know who is and is not "engaged in the business" of dealing firearms. And Congress explicitly defined that term:

> The term "engaged in the business" means … as applied to a dealer in firearms, as defined in section 921(a)(11)(A), a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms[.]

18 U.S.C. § 921(a)(21)(C).

But a putative dealer still needs to know when their actions are "to predominantly earn a profit." *See id.* So Congress provided a definition in Section 921(a)(22), which states in pertinent part that:

> The term "to predominantly earn a profit" means that the intent underlying the sale or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection: *Provided*, That proof of profit shall not be required as to a person who engages in the regular and repetitive purchase and disposition of firearms for criminal purposes or terrorism.

18 U.S.C. § 921(a)(22).

In sum, Section 923's licensing scheme applies to people "engage[d] in the business" of dealing firearms. *See* 18 U.S.C. § 923. A firearms dealer is "engaged in" that business if he or she "devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms." *Id.* at § 921(a)(21)(C). And the phrase "to predominantly earn a profit" means "that the intent underlying the sale

or disposition of firearms is predominantly one of obtaining pecuniary gain, as opposed to other intents, such as improving or liquidating a personal firearms collection." *Id.* at § 921(a)(22).

**2**

That describes the scheme as currently codified. But the evolution of those laws and definitions is helpful to understand the current dispute and the agency action being challenged in this litigation.

The codified provisions emerged from several major statutes, starting with the Omnibus Crime Control and Safe Streets Act of 1968. Pub. L. No. 90-351, 82 Stat. 197 (1968); *see also United States v. Hill*, 971 F.2d 1461, 1471 (10th Cir. 1992) (en banc) (Moore, J., dissenting). That act was soon amended by the Gun Control Act of 1968. Pub. L. No. 90-618, 82 Stat. 1213 (1968); *see also* 18 U.S.C. § 921 *et seq*. And in turn, the Gun Control Act was amended by the Firearm Owners' Protection Act. Pub. L. No. 99-308, 100 Stat. 449 (1986); *see also Aposhian v. Barr*, 958 F.3d 969, 975 (10th Cir. 2020) (discussing the Acts in context with each other).

In 2022, the most recent amendment occurred with the enactment of the Bipartisan Safer Communities Act. Pub. L. No. 117-159, 136 Stat. 1313 (2022). That Act amended Section 921(a)(21)(C) by replacing the phrase "with the principal objective of livelihood and profit" with "to predominantly earn a profit." 136 Stat. at 1324–25, § 12002. It also added Section 921(a)(22) to define the new phrase. *Id.* at 1325, § 12002.

This course of statutory amendments led to the current regulatory action being challenged. After the BSCA was enacted, ATF published (after appropriate notice and comment) the Final Rule at issue in this dispute. Final Rule, Definition of "Engaged in the Business" as a Dealer in Firearms, 89 Fed. Reg. 28968 (Apr. 19, 2024) (to be codified at 27 C.F.R. pt. 478). It purports to further define "engaged in the

4

business," among other things.[1] *See* 89 Fed. Reg. 29067–68. The Final Rule's version of that definition is, in relevant part, as follows:

> A person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms. The term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of the person's personal collection of firearms.

89 Fed. Reg. 29091. The Final Rule also defined "dealer," "purchase," "sale," "predominantly earn a profit," and "personal collection." 89 Fed. Reg. 29067.

Plaintiffs dispute several of the Final Rule's definitions, but the "personal collection" definition is particularly important. Section 921(a)(21)(C) permits individuals to "enhance[] … a personal collection" without engaging in the business of dealing firearms. But the Final Rule states that "firearms accumulated primarily for personal protection" are excluded from the definition of a "personal collection." 89 Fed. Reg. 29090. Congress has not yet defined the term "personal collection." *See generally* 18 U.S.C. § 921(a). According to the Government, it requires a definition to ensure the statutory exception does not swallow the rule.

Along with the definitions, the Final Rule created presumptions for when "a person is 'engaged in the business.'" 89 Fed. Reg. 29090. Other things—like definitions that apply to auctioneers, or for the

---

[1] Formally, the Attorney General was granted administrative and rulemaking authority over the relevant statutes. 18 U.S.C. § 926(a). But he and Congress delegated this responsibility to the Bureau of Alcohol, Tobacco, Firearms and Explosives. *See* 28 U.S.C. §§ 599A(b)(1), (c)(1); 28 C.F.R. § 0.130(a)(1)–(2); *Aposhian v. Barr*, 958 F.3d 969, 975 (10th Cir. 2020) (subsequent history omitted) ("The Attorney General has delegated the responsibility for enforcing and administering … the GCA to ATF."). In short, ATF has authority to implement the statutes at issue here. *See CEW Properties, Inc. v. U.S. Dep't of Just., Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 979 F.3d 1271, 1273 (10th Cir. 2020).

terms "responsible person" and "terrorism"—are in the Final Rule but not at issue. *Id.*; *see generally* Doc. 104.

**3**

The Final Rule was promulgated April 19, 2024 and set to take effect on May 20, 2024. 89 Fed. Reg. 28968. Before it took effect, Kansas and twenty states, three individual Kansas residents, and one Kansas organization filed a complaint asserting that the Final Rule violated the law. The complaint named several defendants, including Merrick B. Garland, United States Attorney General, Steven Dettelbach, Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the United States Department of Justice. Although Kansas led the charge on the litigation, it filed the lawsuit in the Eastern District of Arkansas. Doc. 1 at ¶¶ 1–10.

Plaintiffs sought a preliminary injunction against the enforcement of the Final Rule. *See* Doc. 5 at 7; Doc. 1 at ¶¶ 44–46. That motion was fully briefed, then argued. Docs. 5, 40, 52, 67. After the argument, the State of Arkansas was dismissed for lack of standing. Doc. 75 at 4. As a result, the Eastern District of Arkansas transferred the case to the District of Kansas on May 23, 2024, pursuant to 28 U.S.C. § 1406. *Id.* at 5. By that time, the Final Rule had already gone into effect in all but one state. Doc. 78 at 1.

Texas was the lone state where the Final Rule did not go into effect. Texas—along with three other states and several nonstate plaintiffs—sued Defendants over the Final Rule before it went into effect. *Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 2:24-CV-89, 2024 WL 2277848, at *1–3 (N.D. Tex. May 19, 2024). Texas advanced many of the arguments that Plaintiffs advance in this case. *Id.* at *5. Those arguments were found likely to succeed on the merits, so the Northern District of Texas granted a preliminary injunction. *Id.* at *5–8. But it limited that relief to Texas and several nonstate plaintiffs, finding that the remaining plaintiffs had not demonstrated standing sufficient for "relief at [that] stage of litigation." *Id.* at *3.

After this case was transferred to the District of Kansas, Plaintiffs requested a hearing, Doc. 78, a temporary restraining order, Doc. 81, and the reinstatement of Arkansas as a plaintiff, Doc. 83. The original motion for a preliminary injunction remained pending too. Doc. 4. Defendants responded to Plaintiffs' motion for a temporary restraining order, Doc. 82, and moved to set a briefing schedule for supplemental

6

briefs, Doc. 80. Plaintiffs' motion for a hearing, Doc. 78, and Defendants' motion for a new briefing schedule, Doc. 80, were granted, Doc. 100.

The parties have now submitted briefs in support of and against the motion for a preliminary injunction complying with local practice and identifying controlling Tenth Circuit precedent. Docs. 104, 135, 138. Plaintiffs still seek what they sought in Arkansas: a temporary restraining order and preliminary injunction against the Final Rule's implementation with nationwide application. Doc. 104 at 9, 28.

## II

Plaintiffs request a preliminary injunction. Doc. 104; *see also* Docs. 4 & 81. While they may ultimately succeed on the merits, they have failed to make a strong showing that they are substantially likely to do so. In addition, there are unique procedural factors that counsel a cautious approach at this stage of litigation. As a result, Plaintiffs' motion is denied.[2]

## A

The first problem is standing. Every plaintiff, in any federal court, must establish that they have standing to assert a claim. *See Sierra Club v. United States Env't Prot. Agency*, 964 F.3d 882, 888 (10th Cir. 2020). Plaintiffs establish that they have standing when they satisfy Article III's familiar requirements—that is, injury-in-fact, causation, and redressability. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). This inquiry, as the Supreme Court has repeatedly put it, "requires a plaintiff to first answer a basic question: What's it to you?" *Id.* at 379 (citation and internal quotation marks omitted); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Plaintiffs have yet to persuasively answer that question to the degree necessary for injunctive relief. This does not mean they will ultimately fail to establish standing. It means only that their current struggle to do so undermines their ability to make a strong showing that they are likely to succeed on the merits.

---

[2] Two motions duplicating this effort, Docs. 4 & 81, are also denied. Neither makes arguments not adequately raised in Doc. 104.

7

### 1

Three of the Plaintiffs are individuals, all of whom appear to allege speculative injuries. Phillip Journey and Allen Black are "firearms collector[s] and hobbyist[s]" who reside in Kansas and attend gun shows to sell firearms. *See* Doc. 1 at ¶¶ 3–4. And while neither individual is a federal firearms licensee, *id.*, both remain uncertain whether they will become licensed, *see generally* Docs. 104-4 & 104-5; *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 875–76 (10th Cir. 2020) (rejecting a theory of imminent enforcement because the plaintiff's plans were not concrete).

The same is true of Donald Maxey, who buys but does not sell firearms. *See* Doc. 4-4 at ¶ 4. His alleged injury—that the Final Rule will limit the number of guns in circulation and "reduce public interest in gun shows"—is even more speculative than that of his peers. *See id.* at ¶ 9–11; Doc. 1 at ¶ 117. The organizational plaintiff, Chisholm Trail, fares no better. It counts Black as a member, Doc. 1 at ¶ 6, but his standing to sue is uncertain. As a result, Chisholm Trail cannot rely on his standing to support its own claims. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Nor does it clearly have standing to sue over its own interests. To be sure, it "sponsors and manages [a] biannual" gun show and covers "[a]pproximately 70% of [its] annual operating expenses" with revenue from those two shows. Doc. 104-7 at ¶ 5. Even so, its theory of injury depends on a layered prediction. *See id.* at ¶ 8 (surmising that sellers will avoid shows, thereby "reduc[ing] public interest in [those] events"); Doc. 104 at 17–18. Without more, that could be insufficient. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

### 2

The state plaintiffs' standing hurdle is even more difficult. Two of them, West Virginia and Montana, did not plead any facts to demonstrate how they have been harmed. Most of the other states rely on a speculative sales-tax theory. Doc. 1 at ¶¶ 69–83, 90–91. It works like this: the Final Rule makes individuals less likely to sell guns, which makes gun show promoters less likely to host shows, which makes putative buyers less likely to purchase guns, which ultimately reduces a state's sales tax receipts. *See* Doc. 104 at 13–14. That theory echoes Plaintiffs' other tax-based theory, which looks to taxes imposed on gun show tickets and tables rented at gun shows. *Id.* at 15.

The state plaintiffs have not established with any degree of certainty that they have standing. The Eastern District of Arkansas—in this case—has already rejected their tax injury theories.³ Doc. 75. And that position is not untenable: each theory appears to depend on a speculative chain with many uncertain links. *Id.* at 3–4; *Murthy v. Missouri*, --- S. Ct. ----, No. 23-411, 2024 WL 3165801, at *7–8 (U.S. June 26, 2024) ("Rather than guesswork, the plaintiffs must show that the [independent actors] will likely react in predictable ways to the defendants' conduct.") (citation and internal quotation marks omitted). Plaintiffs counter with several state-official declarations. Docs. 104-8, 104-9, 104-10, 104-11. But those declarations create the same speculative chain as in Plaintiffs' brief. Likewise, Plaintiffs point to a series of cancelled gun shows. Doc. 104 at 14. But a cancelled show alone does not substantiate the states' tax-based theory of injury-in-fact. Shows are not precluded by the Final Rule itself; they are cancelled by show promoters allegedly reacting to the Final Rule.⁴ *See id.*

At this point, it is not necessary to go further. "[S]tanding is a question of justiciability that implicates [a] court's jurisdiction." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (internal quotation marks and alterations omitted). But standing also affects a plaintiff's ability to succeed on the merits, since a plaintiff who lacks standing cannot succeed on the merits. *Church v. Polis*, No. 20-1391, 2022 WL 200661, at *11 (10th Cir. Jan. 24, 2022) ("[P]laintiffs lack standing and therefore fail to make the requisite strong showing of a substantial likelihood of success on the merits of their claims against the federal

---

³ The Eastern District of Arkansas did not discuss one other theory of standing because Arkansas did not raise it. Only Tennessee and New Hampshire made that argument, contending that the Final Rule injures them by increasing their regulatory burdens. Doc. 1 at ¶¶ 93–94, 107–08. But those burdens are voluntary, at least in the first instance, so they are unlikely to suffice as injuries-in-fact. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

⁴ Plaintiffs suggested at the July 1 hearing that even if "independent actors not before the courts" can cause standing problems in some cases, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992), every relevant actor is present in this case. That argument fails to persuade. It tries to overcome an issue with potentially speculative injuries-in-fact. But that issue is addressed with facts or allegations establishing that the injuries are concrete, not independent actors' mere presence in the courtroom or on a pleading. *See Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1232–34 (10th Cir. 2012); *Murthy*, 2024 WL 3165801, at *8.

9

agencies."); *see also Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 (8th Cir. 2021) (noting that standing often tracks a plaintiff's cause of action, but that the two concepts should not be conflated such that a plaintiff with standing is deemed likely to succeed on the merits).

Many or all of Plaintiffs might be able to establish that they have standing to pursue their claims. But they have not established that they are entitled to extraordinary relief because that conclusion is not clear. *Church*, 2022 WL 200661, at *11.

**B**

A second problem counseling against preliminary relief emerges from Plaintiffs' substantive arguments. In the ordinary case, the litigant filing a lawsuit bears the burden of persuasion. In the civil context, that requires establishing entitlement to relief by a preponderance of the evidence, *see Johnson v. Spencer*, 950 F.3d 680, 713 (10th Cir. 2020), or, in the context of a motion to dismiss, establishing the right to relief is plausible, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

That burden is much higher when a party seeks a preliminary injunction. In the Tenth Circuit, that means the party seeking extraordinary relief must show that they are "substantially likely to succeed on the merits of their claims." *Harmon*, 981 F.3d at 1146 (citation omitted).

There are good reasons for that heightened burden. A preliminary injunction is only necessary "to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Schrier*, 427 F.3d at 1258. "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Camenisch*, 451 U.S. at 395. But courts must rule under those circumstances, *see Winter*, 555 U.S. at 20–22, and the demanding "likely success on the merits" standard helps them do so without causing more harm than good, *see* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.3 (3d ed., Supp. 2024).

Plaintiffs advance six substantive arguments in favor of their preliminary injunction. Doc. 104 at 18–27. As to each argument, Plaintiffs fail to meet the heightened standard of demonstrating that they are "substantially likely" to succeed on the merits. This is not to say, of

course, that Plaintiffs cannot eventually succeed on the merits of one or more of their claims. It recognizes only that they have not yet shown an entitlement to the relief they currently seek.

During the July 1 hearing, the parties presented their respective positions. And, as the transcript shows, both sides have colorable arguments why the Final Rule may or may not be unlawful. For example, Plaintiffs argued that Defendants lack authority to promulgate the Final Rule because the agency can only prescribe "necessary" rules and regulations. *See* Doc. 104 at 18 (citing 18 U.S.C. § 926). But this statutory authority is typically thought to be quite "broad," *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 920 F.3d 1, 26 (D.C. Cir. 2019), *judgment entered*, 762 F. App'x 7 (D.C. Cir. 2019), and it is probably broad enough to authorize something along the lines of what the Final Rule has done, *see Nat'l Rifle Ass'n v. Brady*, 914 F.2d 475, 479 (4th Cir. 1990); *Loper Bright Enterprises v. Raimondo*, --- S. Ct. ----, No. 22-1219, 2024 WL 3208360, at *13 (U.S. June 28, 2024) (noting that Congress may enable an agency "to regulate subject to the limits imposed by a term or phrase that leaves [it] with flexibility," "such as 'appropriate" or 'reasonable'") (citations omitted); *see also* William Baude, *Understanding Chevron's Death*, Reason (Jun. 28, 2024), https://reason.com/volokh/2024/06/28/understanding-chevrons-death/.

Nonetheless, Plaintiffs identified instances where the Final Rule may have effectively attempted to rewrite the statute, which the agency may not do. For example, the Final Rule provides that firearms "accumulated primarily for personal protection" do not fall within Section 921(a)(21)(C)'s carveout for certain individuals who seem to, but do not actually, engage in the business of dealing firearms. 89 Fed. Reg. 29090. Defendants struggle to tie this part of the Final Rule to the text of Section 921(a)(21)(C), other than to say the statutory exception (but for the Final Rule) would swallow the statutory rule. That position appears to have significant flaws. *See Texas v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 2:24-CV-89, 2024 WL 2277848, at *6 (N.D. Tex. May 19, 2024) ("Nothing in the foregoing text suggests that the term 'personal collection' does not include firearms accumulated primarily for personal protection — yet that is exactly what the Final Rule asserts.").

While Plaintiffs have identified serious flaws with the Final Rule and may be able to succeed on the merits, they have not established that the state of play is so one-sided as to warrant injunctive relief at this point. Rather, the Final Rule's potential flaws are more

appropriately addressed outside of Plaintiffs' request for a preliminary injunction.

### C

Several unique procedural considerations also bolster that conclusion. *First*, preliminary injunctive relief *is* extraordinary. *Winter*, 555 U.S. at 24. Some have observed that district courts have drifted away from that conclusion, such that they issue preliminary relief more readily than the "extraordinary" label would suggest. *See Department of Homeland Security v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring in the grant of stay) (explaining the "increasingly common practice of trial courts" granting injunctive relief that transcends the parties); Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv. L. Rev. 687 (1990); Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction*, 131 Harv. L. Rev. 417, 466 (2017). And there are costs to such an approach. *See generally Labrador v. Poe by & through Poe*, 144 S. Ct. 921 (2024) (Kavanaugh, J., concurring in the grant of stay); *United States v. Texas*, 599 U.S. 670, 694 (2023) (Gorsuch, J., concurring). But it remains an accurate description of the law as set forth by both the Supreme Court, *Winter*, 555 U.S. at 24, and the Tenth Circuit, *Free the Nipple-Fort Collins*, 916 F.3d at 797.

In this case and at this point, Plaintiffs have not shown clear entitlement to extraordinary relief. *See* Section II.A–B., *supra*. Plaintiffs—all twenty-four of them—pled only questionable injuries-in-fact. Even if one of them clears the standing hurdle, that Plaintiff must then sort out a series of complex arguments that would benefit from further development. Some of those arguments are much stronger than others, as was made clear at the July 1 hearing. Yet even the best arguments have not been supported such that they suggest any of the Plaintiffs are "substantially likely to succeed on the merits." *Harmon*, 981 F.3d at 1146. Under these circumstances, a court should withhold equitable relief. *See id.*

*Second*, the unusual procedural posture counsels against affording relief at this stage of the proceedings. While Plaintiffs sued in Arkansas before the Final Rule went into effect, the Final Rule became effective *before* the Arkansas court dismissed the only plaintiff supporting venue in that district. Doc. 75. It then transferred the case to this district *after* the Final Rule had gone into effect. *Id.* In other words, Plaintiffs seek a preliminary order that would upend the current legal landscape as it has existed since their suit was transferred to Kansas.

The Tenth Circuit has identified certain types of injunctions as especially disfavored. *See generally Fish v. Kobach*, 840 F.3d 710, 723–24 (10th Cir. 2016). Those include injunction requests that seek all the relief the moving party could recover at the conclusion of a full trial on the merits and/or those that alter the status quo. *Id.* In those scenarios, the moving party must make a strong showing that they are substantially likely to succeed on the merits. *Mrs. Fields Franchising, LLC v. MFGPC*, 941 F.3d 1221, 1232 (10th Cir. 2019).

It is not necessary to invoke this heightened standard to deny Plaintiffs relief,[5] as they cannot establish a likelihood of success on the merits under the standard that applies to every motion for injunctive relief. *See*, *e.g.*, *Colorado v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021) (declining to consider whether the higher burden applied because the state failed to satisfy the ordinary burden). But the concerns motivating those heightened standards, which appear to be present in this case, are instructive and counsel a more conservative approach to affording preliminary equitable relief.

*Third*, Plaintiffs seek unusually broad relief in the form of a "nationwide injunction." Doc. 104 at 28. Anything less, they argue, "would create a patchwork of enforceable federal law." *Id.* Several considerations undermine that request. One is the premise of the argument: the

---

[5] It is not a foregone conclusion that the heightened standard applies. For example, there are several possibilities and no clear answer as to how one defines the status quo. *See United States v. Texas*, 144 S. Ct. 797, 799 n.2 (2024) (Barrett, J., concurring in denial of applications to vacate stay) (exploring whether it is "the day before [the Government] enacted [a challenged law]," "[t]he day before the lawsuit was filed," or the day a stay request "was docketed"); *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 342 F.3d 1170, 1178 (10th Cir. 2003) (subsequent history omitted) ("[T]he definition of 'status quo' for injunction purposes depends very much on the facts of a particular case."); *Schrier*, 427 F.3d at 1260–61; *see also Labrador*, 144 S. Ct. at 933–34 (Kavanaugh, J., concurring in the grant of stay) ("Is the status quo the situation on the ground before enactment of the new law? Or is the status quo the situation after enactment of the new law, but before any judicial injunction?"). And it appears, though is not certain, that Plaintiffs are seeking all the relief they could hope to receive after a trial on the merits, which is "anathema to our system of jurisprudence, creating a system of "[s]entence first" and "[v]erdict [a]fterwards." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1099 (10th Cir. 1991), *holding modified by O Centro Espirita Beneficente Uniao Do Vegetal*, 389 F.3d 973.

patchwork that Plaintiffs hope to avoid already exists. *Texas*, 2024 WL 2967340, at *10. As a result, the equities in this case—where the Final Rule was allowed to go into effect before the case was transferred to the District of Kansas—do not favor a nationwide injunction. *See Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017) (explaining that the issuance of injunctive relief "is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents"). In fact, what Plaintiffs call a patchwork is a necessary part of lower-court review, where percolation and varied considerations inform subsequent appellate review.

That process is underway, as Plaintiffs' issues have been raised elsewhere by other states with varying degrees of success. *See generally* Doc. 139. In the same way, some states have not chosen to seek relief from the Final Rule and may believe the Final Rule is both lawful and good policy. These decisions should not be overridden absent a clear entitlement to relief—especially after the Final Rule has gone into effect—on the grounds that one group of states convinced one judge to intercede. *See City of Chicago v. Barr*, 961 F.3d 882, 916–18 (7th Cir. 2020); *Labrador*, 144 S. Ct. at 933–34 (Kavanaugh, J., concurring in the grant of stay); *see also* William Baude & Samuel L. Bray, *Proper Parties, Proper Relief*, 137 Harv. L. Rev. 153, 162 (2023).

A nationwide preliminary injunction forbidding continued implementation of the Final Rule for all states would frustrate nonparty states' interests and fail to show due regard for the other branches of the federal government. *See Texas*, 599 U.S. at 693–94 (Gorsuch, J., concurring) (suggesting that universal injunctions exceed a court's Article III's authority to decide only cases and controversies and may "trench[] on the power of the elected branches to shape legal rights and duties more broadly"). And where, as here, the right to relief is not clear, that counsels for restraint and handling objections to the Executive Branch's assertion of authority after further development.

\*   \*   \*

In short, serious issues appear in Plaintiffs' standing and merits arguments that prevent them from making the strong showing necessary to obtain injunctive relief. And practical considerations including the nature of Plaintiffs' request and procedural stage at which this request is being made only worsen those issues. As a result, Plaintiffs have not cleared the high bar imposed between a plaintiff and preliminary injunctive relief. *See Winter*, 555 U.S. at 20. That is enough to end the

14

inquiry, so the other preliminary injunction factors are not considered. *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1255 (10th Cir. 2017); *People for the Ethical Treatment of Prop. Owners v. U.S. Fish and Wildlife Serv.*, 852 F.3d 990, 1008 (10th Cir. 2017) ("If it is not necessary to decide more, it is necessary not to decide more.") (citation omitted). Plaintiffs have not established that they are entitled to their requested relief, even if they might eventually succeed on the merits.

### III

For the foregoing reasons, Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, Doc. 103, is DENIED. Their other motions for preliminary injunctive relief, Docs. 4 & 81, are also DENIED.

It is so ordered.

Date: July 10, 2024                     s/ Toby Crouse
                                        Toby Crouse
                                        United States District Judge

15