**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**WICHITA DIVISION**

| | | |
|---|---|---|
| STATE OF KANSAS, | § | |
| *ET AL.* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | |
| | § | |
| MERRICK GARLAND, | § | Civil Action No. 6:24-cv-01086-TC-TJJ |
| *ET. AL.* | § | |
| | § | |
| *Defendants*. | § | |
| | § | |
| | § | |
| | § | |

<u>Plaintiffs' Response to Defendants' Motion to Dismiss</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................................3

INTRODUCTION...............................................................................................................1

ARGUMENT .......................................................................................................................1

    I.   Individual Plaintiffs have standing ................................................................ 3

    II.  Plaintiff Chisholm Trail has standing................................................................ 9

    III.   Plaintiff States have standing ...........................................................................10

CONCLUSION ..................................................................................................................15

TABLE OF AUTHORITIES

Cases

*281 Care Comm. v. Arneson*, 638 F.3d 621 (8th Cir. 2011) .........................................9

*Aptive Environmental, LLC v. Town of Castle Rock*, 959 F.3d 961 (10th Cir. 2020) ...................................................................................................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).......................................................................1

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) ...................................1

*Bennett v. Spear*, 520 U.S. 154 (1997)......................................................................15

*Biden v. Nebraska*, 143 S. Ct. 2355 (2023) ................................................................3

*California v. Azar*, 911 F.3d 558 (9th Cir. 2018) ....................................................18

*Carpenters Indus. Council v. Zinke*, 854 F.3d 1 (D.C. Cir. 2017) ...........................3

*Chamber of Commerce of U.S. v. Federal Election Comm'n*, 69 F.3d 600 (D.C. Cir. 1995).............................................................................................................5

*City of Oakland v. Lynch*, 798 F.3d 1159 (9th Cir. 2015) ................................. 14, 17

*Curling v. Raffensperger*, 702 F. Supp. 3d 1303 (N.D. Ga. 2023) ...........................4

*Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251 (10th Cir. 2024) ....3

*Florida v. Becerra*, 544 F. Supp. 3d 1241 (M.D. Fla. 2021).............................. 14, 17

*Friends of the Earth*, 528 U.S 167 (2000)................................................................11

*Gardner v. Toilet Goods Association*, 387 U.S. 167 (1967).......................................5

*Garling v. United States Environmental Protection Agency*, 849 F.3d 1289 (10th Cir. 2017)..................................................................................................................1

*Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023)............................................2

*Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998)...............................9, 10

*Louisiana v. Biden*, No. 2:24-CV-00406, 2024 WL 3253103 (W.D. La. July 1, 2024) ................................................................................................... 14, 15, 16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............................................2, 5

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)..................................................9

*Missouri v. Biden*, No. 4:24-CV-00520-JAR, 2024 WL 3104514 (E.D. Mo. June 24, 2024) ............................................................................................................3

*Mountain States Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996) ..............4

*New York v. Yellen*, 15 F.4th 569 (2d Cir. 2021) ......................................... 14, 15, 16

*Producers of Renewables United for Integrity Truth & Transparency v. Environmental Protection Agency*, No. 19-9532, 2022 WL 538185 (10th Cir. 2022) ..............................................................................................................2

*Santa Fe Alliance for Public Health & Safety v. City of Santa Fe*, 993 F.3d 802 (10th Cir. 2021) ..............................................................................................................2

*Schmitz v. Colorado State Patrol*, 841 F. Appx. 45 (10th Cir. 2020) ........................2

*Sierra Club v. Trump*, 977 F.3d 853 (9th Cir. 2020) ................................... 14, 15, 17

*St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481 (8th Cir. 2006) ..............9

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .................................................11

*Susan B. Anthony v. Driehus*, 573 US 149 (2014) .............................................. 10, 11

*Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021) .............................................................18

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ...............................................16

*Thiebaut v. Colo. Springs Utilities*, 455 F. Appx. 795 (10th Cir. 2011) ....................4

*Western Watersheds Project v. Interior Board of Land Appeals*, 62 F.4th 1293 (10th Cir. 2023) ..............................................................................................................3

*WildEarth Guardians v. EPA*, 759 F.3d 1196 (10th Cir. 2014) ..................................3

*Wyoming v. Oklahoma*, 502 U.S. 437 (1992) ...........................................................13

*Wyoming v. U.S. Department of the Interior*, 674 F.3d 1220 (10th Cir. 2012) ........15

Regulations

27 C.F.R. § 478.13(b) ................................................................................................. 5

## INTRODUCTION

Defendants attempt to dismiss this case by facially attacking the standing of *all* Plaintiffs. Oddly, they do this by making factual arguments against the Complaint and contesting matters in the declarations Plaintiffs utilized in the preliminary injunction litigation. This is inappropriate because in a facial attack, the court must presume that the facts pled in the Complaint (and any reasonable inference thereof) are true. Defendants go as far as to assert that, even if Plaintiffs were to amend their Complaint, that the effort would be futile. Def. Mot. at 9. The Court had previously declined to adopt Defendants' extreme conclusion, stating that "[m]any or all of Plaintiffs might be able to establish that they have standing to pursue their claims." Order denying Prelim. Inj., ECF No. 164 at 10. That counsels against Defendants' drastic request to dismiss the entire case based on a facial attack. Furthermore, if the Court finds that any of the Plaintiffs have standing, it can end its analysis and deny Defendants' Motion. Regardless, the Individual, Organizational, and State Plaintiffs all possess standing. Defendants' arguments otherwise are meritless, and the Court should deny the motion.

## ARGUMENT

The Court reviews a facial attack on the Complaint under 12(b)(1) the same as a motion to dismiss under 12(b)(6). *Garling v. United States Env't Prot. Agency*, 849 F.3d 1289, 1293 n.3 (10th Cir. 2017). So, the Court applies the familiar standard outlined in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Id.*; *see also Schmitz v. Colorado State Patrol*, 841 F. Appx. 45, 54 (10th Cir. 2020). "[A]t the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury." *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 814 (10th Cir. 2021). "At the pleading stage, general factual allegations of injury resulting from the defendant's

conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Hooper v. City of Tulsa*, 71 F.4th 1270, 1277 (10th Cir. 2023) (brackets omitted) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"An alleged procedural injury is subject to a 'somewhat relaxed, or at least conceptually expanded,' standard of standing.  For example, a plaintiff need only show that its alleged injury 'could be redressed by requiring the agency to make a more informed decision.'" *Producers of Renewables United for Integrity Truth & Transparency v. Env't Prot. Agency*, No. 19-9532, 2022 WL 538185, at *9 (10th Cir. 2022) (unpublished) (quoting *WildEarth Guardians v. EPA*, 759 F.3d 1196, 1205 (10th Cir. 2014)).  The facts pled here are more than sufficient to show that Plaintiffs suffered constitutional, financial, and procedural harms and that those harms are directly a result of Defendants' Final Rule.

If one party has standing, the Court should end its analysis and deny the motion to dismiss.  The Court can permit all of the parties to remain on the case, as the Supreme Court did in *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023).  A "suit may proceed 'if at least one plaintiff has standing,'" *Missouri v. Biden*, No. 4:24-CV-00520-JAR, 2024 WL 3104514, at *19 (E.D. Mo. June 24, 2024) (internal brackets omitted) (quoting *Biden v. Nebraska*, 143 S. Ct. at 2365), as long as at least one plaintiff has standing for "each form of relief sought," *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251, 1262 (10th Cir. 2024) (quoting *W. Watersheds Project v. Interior Bd. of Land Appeals*, 62 F.4th 1293, 1296 (10th Cir. 2023)).  *See also Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 9 (D.C. Cir. 2017) ("Because we conclude that the American Forest Resource Council has standing to challenge the critical habitat designation, we need not address whether the other plaintiffs have standing."); *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996) ("For each claim, if constitutional and

2

prudential standing can be shown for at least one plaintiff, we need not consider the standing of

the other plaintiffs to raise that claim."); *Curling v. Raffensperger*, 702 F. Supp. 3d 1303, 1368

(N.D. Ga. 2023) (noting that the "One Plaintiff Rule 'encourages judicial efficiency by permitting

a court to proceed to the merits of a case involving multiple plaintiffs seeking identical relief

when it is clear that at least one plaintiff has standing.'" (quoting *Thiebaut v. Colo. Springs*

*Utilities*, 455 F. Appx. 795, 802 (10th Cir. 2011) (unpublished)).  Here, all Plaintiffs seek the

same relief—vacatur of the Final Rule—and so if any one of them has standing to challenge the

Final Rule, the Court should allow the case to proceed.  This is especially true in the posture of a

facial attack on a motion to dismiss.

## I.      Individual Plaintiffs have standing

Defendants fail up front in their challenge to the standing of Individual Plaintiffs because

their stated pre-enforcement challenge standard does not apply to APA challenges to agency

rules.  It is well-established that "an agency rule, unlike a statute, is typically reviewable without

waiting for enforcement." *Chamber of Commerce of U.S. v. Federal Election Comm'n*, 69 F.3d

600, 604 (D.C. Cir. 1995) (internal citation omitted).  And when the plaintiff is the object of the

government regulation, "there is ordinarily little question that the action or inaction has caused

him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504

U.S. at 561-62.  Therefore, in the APA context, pre-enforcement judicial review is the norm,

especially when the plaintiff is the object of the regulatory action.  This makes sense.  The

alternative is that anyone seeking to challenge an agency action would be required to

demonstrate how their conduct violates the new regulation or to wait for enforcement

proceedings before seeking judicial review.  But that is not what the law requires.

Defendants' argument is laid bare when one examines their selective use of brackets.  As

an example, the Motion states that "the Tenth Circuit has also made clear that 'compliance with

the challenged [Rule]'—which here would entail obtaining a federal firearms license—cannot 'satisfy the credible-threat-of-[enforcement] test' for standing." Def. Mot. at 13 (citing *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 548 (10th Cir. 2016)). The bracketed word "[Rule]" replaces the word "statute" in the original quote. *Id.* This is important because different standards apply to APA challenges of agency rules then to challenges of congressionally-enacted statutes. The choice of whether to comply with an unlawful agency rule (and incur the costs associated with compliance) or face the consequences *does* constitute standing in the APA context. In *Gardner v. Toilet Goods Association*, 387 U.S. 167, 172-173 (1967), the Supreme Court found standing where the party challenging an action is placed in a "quandary" where they could either test the regulations by waiting for enforcement actions or comply with the regulation and the costs associated with them. In the present case, the Individual Plaintiffs are in a "quandary" where they (1) could take a risk and see what happens by continuing in their otherwise lawful behavior, (2) get a license to sell firearms and incur the costs associated with it, or (3) stop selling firearms altogether. That alone suffices to confer standing. Attempts to twist the caselaw do not change that. Because Individual Plaintiffs are regulated by the Final Rule and will undeniably face harm absent judicial intervention—and already have incurred harm by having to cease exercising their constitutional rights because of the Final Rule—they possess standing.

Even if the Court were to employ Defendants' standard, Individual Plaintiffs would still have standing. Defendants argue that the type of firearm transactions outlined in Individual Plaintiffs' declarations are not prohibited by the Final Rule because "occasional sales at gun shows" do not amount to being "engaged in the business." Def. Mot. at 12. In support of this contention, Defendants reference that portion of the Final Rule which states that, "a person shall not be presumed to be engaged in the business of dealing in firearms when reliable

evidence shows that the person is only reselling or otherwise transferring firearms ...
occasionally to obtain more valuable, desirable, or useful firearms for the person's personal
collection." 27 C.F.R. §§ 478.13(e) and (e)(2).  The Final Rule goes on to define "personal
collection" as being a collection of firearms a person accumulates "for study, comparison,
exhibition (e.g., collecting curios or relics, or collecting unique firearms to exhibit at gun club
events), or for a hobby." 27 C.F.R. § 478.11.

Defendants have made a facial attack on the Complaint.  Def. Mot. at 4 ("Defendants'
motion here is a facial attack, which looks only to the factual allegations of the complaint."
(quotation marks omitted)).  So, it is inappropriate to consider the declarations at all; all that
matters now is that Plaintiffs have plausibly alleged that they engage in behavior which brings
them under the auspices of the Final Rule, putting them at risk of civil and criminal penalties.

The Final Rule itself states "even a single firearm transaction or offer to engage in a
transaction when combined with other evidence (*e.g.*, where a person represents to others a
willingness and ability to purchase more firearms for resale), may require a license" and
"engaging or offering to engage in frequent transactions may be highly indicative of business
activity." 27 C.F.R. § 478.13(b).  Individual Plaintiffs have adequately pled that they face a
credible risk of enforcement: The Final Rule is intentionally unclear as to what constitutes
"other evidence," and so any number of behaviors they (otherwise legally) engage in may put
them at risk.  And they certainly pled sufficient facts to demonstrate that.  For example, Plaintiff
Journey notes in the Complaint that he attends four or five gun shows every year where he buys
and sells firearms without a license.  Compl. ¶ 3, ECF No. 1.  Plaintiff Black also sells firearms at
gun shows without a license.  *Id.* at ¶ 4.  By virtue of engaging in firearms transactions *at all*
without a license there is a credible risk of enforcement if Defendants determine there is "other
evidence" such as Individual Plaintiffs demonstrating a willingness and ability to purchase more

firearms.  In Plaintiff Journey's case, selling firearms at four or five gun shows every year could be deemed as engaging in "frequent transactions" which also subjects him to enforcement.

Defendants' argument that there is no credible risk of enforcement because Plaintiffs sell firearms from their personal collection is simply incorrect and ignores the pleaded facts.  The Final Rule excludes weapons primarily used for personal protection (in other words, for self-defense) from the personal collection safe harbor.  89 Fed. Reg. 29,038.  Plaintiff Journey pled that the firearms he sells from his personal collection include firearms considered self-defense weapons.  Compl. ¶ 3.  The pleadings therefore plausibly show he falls outside the safe harbor and is subject to the Final Rule.

Defendants' Motion also ignores the chilling effect the Final Rule has on Individual Plaintiffs' otherwise law-abiding behavior.  This is especially true since Individual Plaintiffs are making a void-for-vagueness challenge, pleading that they do not know how to conduct themselves in a manner that complies with the Final Rule.  At this stage, their confusion is assumed true.  In addition to the confusion over what qualifies as a "personal collection" and being "engaged in the business," there is also confusion over what the term "occasionally" means.  If Journey and Black are selling firearms at gun shows four to five times a year— including rifles and handguns—does that qualify as "occasional" for the purposes of the Final Rule?  It is not clear.  Does the answer change given Journey's past sale of dozens of firearms at a time through auction, a practice he was planning to continue before the Final Rule went into effect?  It is inevitable that confusion over not only the definition but also the degree of enforcement will deter law abiding citizens from participating in the private sale or transfer sale of firearms.  This also highlights why Defendants' cannot meet their heavy burden to prevail on a facial attack on standing.  Even if this Court were not convinced Plaintiffs have adequately pled

standing yet, for Defendants to prevail they would have to demonstrate that Plaintiffs cannot amend their complaint to do so in the future.  Defendants cannot meet this burden.

As courts have repeatedly held in the First Amendment context, the simple "chilling effect" of a law—caused by the mere prospect of administrative or criminal sanctions in the future—provides sufficient basis for standing.  The Second Amendment—which is not a "second-class right" to be "singled out for special—and specially unfavorable—treatment," contains implicit rights just like the First Amendment, and it should not be "subject to an entirely different body of rules than the other Bill of Rights guarantees."  *McDonald v. City of Chicago*, 561 U.S. 742, 778–79, 780 (2010).  Therefore, it requires no great "precedential stretch" to apply these same holdings to laws that implicate the Second Amendment.

A plaintiff bringing First Amendment claims need not always "allege a subjective intent to violate a law in order to establish a reasonable fear of prosecution."  *281 Care Comm. v. Arneson*, 638 F.3d 621, 629 (8th Cir. 2011).  All that need be shown to establish a claim is that the plaintiff is "a target or object" of the prohibition.  *St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006).  Indeed, the case of *Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998), dealing with religious proselytizers, is illustrative.  There, the government contended that the plaintiff lacked standing because no one was arrested or threatened with arrest on a hand billing ordinance.  *Id.* at 1217.  But the members of the church specifically pled that they wished to hand out religious literature and feared prosecution under the city law.  *Id.*  The government in *Krantz* refused to disclaim it would enforce the law against the plaintiffs.  *Id.*  This was enough to establish standing to challenge the city's ordinance.  *Id.* at 1218.  The Tenth Circuit held similarly in *Aptive Environmental, LLC v. Town of Castle Rock*, under comparable bare facts.  959 F.3d 961, 976 (10th Cir. 2020).

Nevertheless, Defendants argue that because this fear of future criminal sanctions for violating the Final Rule is "speculative," it is not sufficient to establish standing. Def. Mot. at 12. But this is a specious argument. In *Susan B. Anthony v. Driehus*, 573 US 149 (2014), the Supreme Court dealt with the issue of what is needed to establish a justiciable threat of future prosecution for standing purposes. In that case, the state of Ohio had passed a law which made it a crime to make "false statements" about candidates during political campaigns. The Susan B. Anthony List (SBA), a nonprofit, pro-life organization, that actively campaigns against pro-abortion candidates, filed suit alleging that the law was a violation of their First Amendment rights. Although they were not presently facing a threat of prosecution under the law, because SBA had unspecified plans to continue their practice of "outing" pro-abortion candidates in the future, SBA argued that they had standing based on the threat of future enforcement of the law. The Supreme Court agreed, holding that the simple desire to do something in the future that could result in prosecution was sufficient to establish a "cognizable injury" for purposes of standing, even if the plaintiffs had not established a specific date in the future or plan to do the prohibited thing. *Id.* at 161. All that was needed was for the plaintiffs to establish "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." *Id.* at 159.

Just like in *Driehus*, Individual Plaintiffs in the case at bar have pled that prior to the Final Rule taking effect they did the very thing prohibited by the Final Rule (sell firearms multiple times a year without a license). Individual Plaintiffs are aware of the Final Rule and have an articulable and justifiable concern that their future conduct could result in the threat of enforcement. If the Final Rule remains in place and any Individual Plaintiff decides to go forward and sell one or more firearms, then it would be a very small step for enforcement action to occur. This is especially true under the "zero tolerance" enforcement regime adopted public

by Defendants.[1]  This "cognizable threat" of enforcement based on the potential future conduct of the Plaintiffs is enough to establish standing for the Individual Plaintiffs.

## II.     Plaintiff Chisholm Trail has standing

Defendants argue that Chisholm Trail Antique Gun Association lacks standing because the organization cannot establish a harm.  "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth*, 528 U.S 167, 181 (2000).  To establish standing under this theory, an organization must "make specific allegations establishing that at least one identified member ha[s] suffered or [will] suffer harm."  *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).  Chisholm Trail has adequately pled this by noting that Plaintiffs Black and Maxey are members who also have standing to sue in their own right.  Compl. ¶ 6.  Chisholm Trail also pled that neither it nor most of its members are federal firearms licensees (FFLs), but that they attend gun shows every year where they sell firearms.  *Id.*  The Final Rule will harm these members because it would require them to become federal firearms licensees (FFLs), seek out the services of an FFL (at a cost of money and time to the members), or stop selling firearms from their personal collections at gun shows.  That suffices to adequately plead standing.

In addition to the harm suffered by one or more of its members, Chisholm Trail will also be directly injured by the Final Rule.  Chisholm Trail pled that the Final Rule would reduce revenues from gun shows that it sponsors and manages because it would result in fewer vendors and attendees and would increase its costs and burdens.  Compl. ¶ 118.  Since many firearm

---

[1] *See* Houston Keene, *Internal ATF Docs Show 'Zero Tolerance' Guidelines for Shutting Down Gun Stores*, FOX News (Feb. 10, 2024), https://tinyurl.com/fhumnp3r.

sellers at these gun shows are private party unlicensed vendors, *id.* ¶¶ 3–6, and there will be fewer people willing to risk selling a firearm without an FFL, the Final Rule will negatively affect both attendance and revenue for the organization. Defendants try to contest the facts underlying the pleadings. Def. Mot. at 14. But they made a facial attack on standing, *id.* at 4, not a factual attack. As such, the Court must accept these statements as true; Chisholm Trail has standing.

### III.    Plaintiff States have standing

First, Defendants argue that Plaintiff States do not have standing because the loss of tax revenue is too "highly attenuated" and relies on a chain of events. Def. Mot. at 6. They argue Plaintiffs would need to show (1) there has been a decrease in the number of sellers at gun shows because of the Final Rule; (2) there has been a decrease in the number of vendors at gun shows; (3) there has been a decrease in the number of sales at gun shows; and (4) this decrease has led to less tax collection by the States. *Id.* Such an argument isn't supported by law, especially regarding a facial attack on standing.

Additionally, what Defendants fail to acknowledge is that Plaintiffs pled each and every one of these steps. Plaintiffs alleged that they specifically tax the sales of firearms and rental of tables at gun shows. Compl. ¶¶ 61, 69–86, 90–92 (describing how Plaintiff States tax sales of firearms and participation at gun shows). They pled that the Final Rule increases the number of people who are required to obtain licenses before selling firearms. *Id.* ¶¶ 56, 59, 115–118. They pled that people who sell firearms without a license risk criminal and civil penalties under the Final Rule. *Id.* ¶¶ 58, 115–118. They pled that the threat of criminal and civil penalties will cause fewer people to attend gun shows to buy and sell. *Id.* ¶¶ 61–62, *see also* 89 Fed. Reg. 29,054 (acknowledging there will be a decrease in firearm sales). They pled that this decrease will lead to fewer sales and fewer rented tables. Compl. ¶¶ 61, 64. Because Plaintiffs instigated this suit

before the Final Rule took effect, the Complaint alleges that the Final Rule *will* lead to a decrease in sales.  *See* Compl. ¶ 62.  While the Court only considers the four-corners of the Complaint at this stage, it is worth noting that Plaintiffs have since produced evidence showing that the Final Rule is, in fact, already *causing* a decrease in sales as they anticipated.  They also pled the Final Rule will cause fewer people to make taxable sales of firearms online.  *Id.* ¶¶ 66, 68.  The decrease in sales and table rentals will lead to less tax revenue collected by the States.  *Id.* ¶ 65.  This is sufficient to show that because of the Final Rule, the States will lose and are losing tax revenue.  *Compare Wyoming v. Oklahoma*, 502 U.S. 437, 445 (1992) ("Unrebutted evidence demonstrates that, since the effective date of the Act, Wyoming has lost severance taxes in the amounts of $535,886 in 1987, $542,352 in 1988, and $87,130 in the first four months of 1989.") *and id.* at 445 n.8 (citing affidavits attesting to lost tax revenue), *with Oklahoma v. Biden*, 577 F. Supp. 3d at 1253 ("Neither the complaint nor the State's papers demonstrate any loss of specific tax revenues, or a loss of future tax revenue, beyond sheer speculation.").  So, under Defendants' own theory, the States have standing.

Loss of tax revenue is a cognizable injury.  It is well-established that a State may rest its standing in this injury.  As the Western District of Louisiana recently held, "Plaintiff States have sufficiently alleged that they have and will suffer an injury-in-fact that is actual and imminent based on their allegations of loss of specific tax revenues." *Louisiana v. Biden*, No. 2:24-CV-00406, 2024 WL 3253103, at *10 (W.D. La. July 1, 2024); *see also Oklahoma v. Biden*, 577 F. Supp. 3d at 1253; *New York v. Yellen*, 15 F.4th 569, 576 (2d Cir. 2021); *Sierra Club v. Trump*, 977 F.3d 853, 870 (9th Cir. 2020) ("Economic loss and the loss of tax revenues can be sufficient to establish Article III injury in fact."), *cert. granted, judgment vacated on other grounds sub nom. Biden v. Sierra Club*, 142 S. Ct. 56 (2021); *City of Oakland v. Lynch*, 798 F.3d 1159, 1164 (9th Cir. 2015) (loss of tax revenue, "either directly through income taxes or indirectly through customer

sales taxes," "constitutes injury under Article III."); *Florida v. Becerra*, 544 F. Supp. 3d 1241, 1254 (M.D. Fla. 2021) ("Florida … suffers a concrete economic injury resulting from reduced revenue and increased unemployment spending."). Because Plaintiff States have pled, and the Court should assume as true, that they will lose tax revenue, they have adequately pled an injury-in-fact.[2]

The other two elements of standing are likewise met. The Complaint plausibly pleads that the economic injury is fairly traceable to Defendants and the Final Rule. *See* Compl. ¶¶ 61–68. "[A] state must show a 'fairly direct link between the state's status as a . . . recipient of revenues and the legislative or administrative action being challenged.'" *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012) (quoting *Pennsylvania v. Kleppe*, 533 F.2d 668, 672 (D.C.Cir. 1976)); *Sierra Club*, 977 F.3d at 872 ("The States have illustrated that the lost revenues stem from identifiable projects, directly linking the States' statuses as collectors and recipients of revenues to the challenged actions.").

Defendants attempt to argue that the injury is dependent on the actions of third parties "not before the court." Mot. at 10 (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005)). But this argument fails for several reasons. First, the challenged action need not be the last link in the chain of causation. Even if there is a third party in the chain of causation, the Court may consider "basic economic logic," *New York*, 15 F.4th at 577 (brackets omitted), and whether the government action has a "determinative or coercive effect upon the action of someone else," *Bennett v. Spear*, 520 U.S. 154, 169 (1997). To establish causation, the States must

---

[2] Many of these cases involved expert declarations detailing how much tax revenue the states were expected to lose due to the federal policies. *See, e.g.*, *Louisiana*, 2024 WL 3253103, at *9–10. Such declarations are not needed here, as Defendants have made a facial attack on the Complaint. It is therefore sufficient for Plaintiff States have alleged that they will lose some tax revenue from a specific source, which, as these cases demonstrate, is an injury-in-fact for standing purposes.

simply allege that there is a "realistic" and "predictable" probability that people will be deterred

from selling firearms and renting tables, leading to a loss in tax revenue, because of the Final

Rule. *Louisiana*, 2024 WL 3253103, at *8 (". . . loss of tax revenue was a cognizable injury where

States showed a 'realistic' 'chain of economic events' tying the loss to the challenged statute"

(quoting *New York*, 15 F.4th at 577)); *New York*, 15 F.4th at 577; *Texas v. United States*, 809

F.3d 134, 160 (5th Cir. 2015) (actions of third parties are not speculative if the third part has

"strong incentives" to act or refrain from acting).

    The Final Rule imposes civil, and possibly criminal, sanctions on previously lawful

behavior.  The threat of criminal and civil sanctions inherently deters the behavior it is intended

to deter.  *C.f. Louisiana*, 2024 WL 3253103, at *12.  Rather than expose themselves to the

sanctions for selling firearms without a license, people will stop selling firearms without a

license.  Compl. ¶¶ 59, 61, 62, 115–17; *see also* 89 Fed. Reg. 28,968 (the Final Rule will "deter

[persons who are already engaged in the business of dealing in firearms] from engaging in the

business of dealing in firearms without a license.").  And because the process of obtaining a

license is cumbersome, many will stop selling firearms altogether rather than obtain one.

Compl. ¶¶ 58, 115–17.  The lost tax revenue is directly traceable to the Final Rule.

    Second, in this case, there are no such third parties who are not before the Court.  Here,

all of the parties are represented—the gun sellers and buyers who pay taxes by attending gun

shows, the organizations that host the shows, and the States that receive the revenues.  All three

have pled that the loss of attendance, taxes, and revenue will definitely occur.  And all three have

since been proven correct.

    Finally, if the Final Rule is vacated (and the threat of civil and criminal sanctions lifted),

most, if not all, of the people who stopped selling firearms and renting tables are likely to resume

those activities.  Compl. ¶¶ 58, 115–17.  The injury is therefore redressable.  *Louisiana*, 2024 WL

3253103, at *11–12; *Sierra Club*, 977 F.3d at 872; *City of Oakland*, 798 F.3d at 1164; *Florida*, 544 F. Supp. 3d at 1255 ("[E]ven if other 'variables' contribute to Florida's injury, Florida can establish standing by showing that the conditional sailing order accounts for some of, or aggravates, Florida's injury."). The Plaintiff States tax specific activities. Defendants crafted a Final Rule that imposes civil or criminal penalties on people who participate in those activities without undertaking the onerous process of obtaining a license. Defendants' Rule, therefore, interferes with the States' ability to collect taxes and will result in lost tax revenue. The States possess standing.

Plaintiffs Tennessee and New Hampshire also have standing due to the administrative costs they will incur. As noted in the Final Rule itself, Tennessee is required by state law to run background checks on every firearm sale made by a federally licensed dealer. Compl. ¶ 106. The Final Rule is expected to increase the number of federally licensed sellers, *id.* ¶ 107, which in turn means Tennessee will have to perform more background checks. *See also* 89 Fed. Reg. 29,088 (Tennessee is "affected by this rule to the extent [it] ha[s] to conduct increased background checks."). As in *Texas v. United States*, a federal agency changed a policy, and that policy is forcing Tennessee to choose to either absorb the cost of more background checks, a financial injury to the State, or to change its law because of the Final Rule, a sovereign injury. 809 F.3d at 157 (State had standing when it "sued in response to a significant change in the [federal] policies" that forced the state to incur costs or change its pre-existing statute). Either way, Tennessee has suffered an injury-in-fact caused by the federal agency. *Texas v. Biden*, 10 F.4th 538, 548 (5th Cir. 2021) (noting the "States have incurred and will continue to incur costs associated with the border crisis, at least part of which the district court found is traceable to rescinding MPP. The causal chain is easy to see…"); *see also California v. Azar*, 911

F.3d 558, 573 (9th Cir. 2018) (states have standing to challenge federal healthcare policy when change would increase their own healthcare costs).

Similarly, New Hampshire is a partial point of contact for federal background checks and conduct NCIC background checks for certain types of weapons sold in the State.  Compl. ¶¶ 109–14.  Like Tennessee, an increase in the number of federal licensees means New Hampshire will have to conduct more background checks, with all associated costs, or change its law, a sovereign injury.  Either way, New Hampshire has alleged it will be harmed by the Final Rule and, like Tennessee, it has standing.

## CONCLUSION

For these reasons, the Court should deny Defendants' Motion to Dismiss.  Plaintiffs request a hearing on this motion.

Respectfully submitted this 26th day of August, 2024.

KRIS W. KOBACH
Kansas Attorney General

*/s/ Erin B. Gaide*
Abhishek S. Kambli, 29788
*Deputy Attorney General*
Erin B. Gaide, 29691
*Assistant Attorney General*
Office of the Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612
Telephone: (785) 296-2215
Fax: (785) 296-3131
abhishek.kambli@ag.ks.gov
erin.gaide@ag.ks.gov


*Counsel for Plaintiff State of Kansas*



BRENNA BIRD
Iowa Attorney General

*/s/ Eric H. Wessan*
*Eric H. Wessan
*Solicitor General*
Office of the Iowa Attorney General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
Eric. Wessan@ag.iowa.gov


*Counsel for Plaintiff State of Iowa*

AUSTIN KNUDSEN
Montana Attorney General

*/s/ Christian B. Corrigan*
CHRISTIAN B. CORRIGAN, 25622
*Solicitor General*
*PETER M. TORSTENSEN, JR.
*Deputy Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 N. Sanders Street
Helena, Montana 59601
(406) 444-2707
christian.corrigan@mt.gov
peter.torstensen@mt.gov


*Counsel for Plaintiff State of Montana*

STEVE MARSHALL
Alabama Attorney General

*/s/ Edmund G. LaCour, Jr.*
*Edmund G. LaCour, Jr.
*Solicitor General*
Office of the Alabama
Attorney General
501 Washington Avenue
P.O. Box 300152
Montgomery, AL  36130
Telephone: (334) 242-7300
Fax: (334) 353-8400
Email: Edmund.LaCour@AlabamaAG.gov


*Counsel for Plaintiff State of Alabama*

TREG R. TAYLOR
Alaska Attorney General

*/s/ Aaron C. Peterson*
*Aaron C. Peterson
*Senior Assistant Attorney General*
Department of Law
1031 West Fourth Avenue, Ste. 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: aaron.peterson@alaska.gov


*Counsel for Plaintiff State of Alaska*

CHRISTOPHER CARR
Georgia Attorney General

*/s/ Stephen Petrany*
*Stephen Petrany
*Solicitor General*
Office of the Attorney General of Georgia
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

RAÚL R. LABRADOR
Idaho Attorney General

*/s/ Joshua N. Turner*
*Joshua N. Turner
*Chief of Constitutional Litigation and Policy*
*Alan M. Hurst
Solicitor General
Office of the Idaho Attorney General
P.O. Box 83720
Boise, Idaho 83720
Tel: (208) 334-2400
Josh.turner@ag.idaho.gov


*Counsel for Plaintiff State of Idaho*

TODD ROKITA
Indiana Attorney General

*/s/ James A. Barta*
*James A. Barta
*Solicitor General*
Office of the Attorney General of Indiana
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
Telephone:  (317) 232-0709
James.Barta@atg.in.gov


*Counsel for Plaintiff State of Indiana*

RUSSELL COLEMAN
Kentucky Attorney General

*/s/ Victor B. Maddox*
*Victor B. Maddox
*Aaron J. Silletto
*Zachary M. Zimmerer
Office of the Attorney General
700 Capital Avenue, Suite 118
Frankfort, Kentucky 40601
Phone: (502) 696-5300
Victor.Maddox@ky.gov
Aaron.Silletto@ky.gov
Zachary.Zimmerer@ky.gov


*Counsel for Plaintiff Commonwealth of Kentucky*

ANDREW BAILEY
Missouri Attorney General

*/s/ Bryce Beal*
*Bryce Beal
*Assistant Attorney General*
Missouri Attorney General's Office
207 West High Street
Jefferson City, MO 65101
(573) 751-6633
Bryce.Beal@ago.mo.gov


*Counsel for Plaintiff State of Missouri*

MICHAEL T. HILGERS
Nebraska Attorney General

*/s/ Zachary A. Viglianco*
*Zachary A. Viglianco
*Deputy Solicitor General*
Office of the Nebraska
Attorney General
2115 State Capitol
Lincoln, NE 68509
(531) 739-7645
zachary.viglianco@nebraska.gov


*Counsel for Plaintiff State of Nebraska*

JOHN M. FORMELLA
New Hampshire Attorney General

/s/Brandon F. Chase
*Brandon F. Chase
*Assistant Attorney General*
New Hampshire Department of Justice
1 Granite Place – South
Concord, NH 03301
(603) 271-3650
brandon.f.chase@doj.nh.gov


*Counsel for Plaintiff New Hampshire*


DREW H. WRIGLEY
North Dakota Attorney General

/s/ *Phil Axt*
*Phil Axt
*Solicitor General*
North Dakota Office of the Attorney
General
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Telephone: (701) 328-2210
Email: pjaxt@nd.gov


*Counsel for Plaintiff State of North Dakota*


GENTNER DRUMMOND
Oklahoma Attorney General

/s/ Garry M. Gaskins, II
*GARRY M. GASKINS, II
*Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone:      (405) 521-3921
garry.gaskins@oag.ok.gov


*Counsel for Plaintiff State Oklahoma*


ALAN WILSON
South Carolina Attorney General

/s/ *Joseph D. Spate*
*Joseph D. Spate
*Assistant Deputy Solicitor General*
Office of the Attorney General
State of South Carolina
1000 Assembly Street
Columbia, SC  29201
(803) 734-3371
josephspate@scag.gov


*Counsel for Plaintiff State South Carolina*

19

MARTY J. JACKLEY
South Dakota Attorney General

*/s/ Charles D. McGuigan*
*Charles D. McGuigan
*Deputy Attorney General*
Office of the Attorney General
1302 E. Hwy. 14, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Facsimile: (605) 773-4106
charles.mcguigan@state.sd.us


*Counsel for Plaintiff State of South Dakota*

JONATHAN SKRMETTI
Tennessee Attorney General and Reporter

*/s/ Whitney D. Hermandorfer*
*WHITNEY D. HERMANDORFER
*Director of Strategic Litigation Unit*
*BRIAN DANIEL MOUNCE
*Counsel for Strategic Litigation &
Assistant Solicitor General*
Office of the Tennessee Attorney General
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-1400
whitney.hermandorfer@ag.tn.gov
brian.mounce@ag.tn.gov


*Counsel for the State of Tennessee*

JASON S. MIYARES
Attorney General of Virginia

/s/ *Kevin M. Gallagher*
*Kevin M. Gallagher
*Principal Deputy Solicitor General*
*Brendan T. Chestnut
*Deputy Solicitor General*
*M. Jordan Minot
*Assistant Solicitor General*
Virginia Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
Telephone: (804) 786-2071
Fax: (804) 786-1991
Email: kgallagher@oag.state.va.us
Email: bchestnut@oag.state.va.us
Email: mminot@oag.state.va.us


*Counsel for Plaintiff Commonwealth of Virginia*

PATRICK MORRISEY
West Virginia Attorney General

*/s/ Michael R. Williams*
*Michael R. Williams
*Principal Deputy Solicitor General*
Office of the Attorney General of West Virginia
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25301
(304) 558-2021
michael.r.williams@wvago.gov


*Counsel for State of West Virginia*

BRIDGET HILL
Wyoming Attorney General


/s/ Ryan Schelhaas
*Ryan Schelhaas
 *Chief Deputy Attorney General*
Office of the Wyoming Attorney General
109 State Capitol
Cheyenne, WY 82002
(307) 777-5786
ryan.schelhaas@wyo.gov


*Counsel for Plaintiff State Wyoming*

/s/ Michael D. McCoy
*Michael D. McCoy
*William E. Trachman
Mountain States
Legal Foundation
 2596 South Lewis Way
 Lakewood, Colorado 80227
 (303) 292-2021
Mmccoy@mslegal.org


*Counsel for Plaintiffs Allen Black, Donald Maxey, and Chisholm Trail Antique Gun Association*

/s/ Anna St. John
*Anna St. John
Hamilton Lincoln Law Institute
1629 K St. NW Suite 300
Washington, DC 20006
(917) 327-2392
anna.stjohn@hlli.org

/s/ M. Frank Bednarz
*M. Frank Bednarz
Hamilton Lincoln Law Institute
1440 W. Taylor St. #1487
Chicago, IL 60607
(801) 706-2690
frank.bednarz@hlli.org


*Counsel for Plaintiff Phillip Journey*

*pro hac vice