**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
WICHITA DIVISION**

STATE OF KANSAS, ET AL.,

      *Plaintiffs*,

v.

MERRICK GARLAND IN HIS
OFFICIAL CAPACITY AS ATTORNEY
GENERAL OF THE UNITED STATES,
ET AL.,

      *Defendants*.

§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 6:24-cv-01086-TC-TJJ

**DEFENDANTS' REPLY
IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

ARGUMENT..................................................................................................................................1

I.      The State Plaintiffs Fail to Plead a Cognizable Injury That Is Actual or Imminent ..................1

II.     The Individual Plaintiffs Fail to Allege Conduct That Implicates the Rule ...............................4

III.    Chisholm Trail Also Lacks Standing ................................................................................5

CONCLUSION.............................................................................................................................5

# TABLE OF AUTHORITIES

**CASES**

*Am. Petroleum Inst. v. U.S. Dep't of Interior*,
  823 F. App'x 583 (10th Cir. 2020) ...........................................................4

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................... 3, 5

*Colo. Outfitters Ass'n v. Hickenlooper*,
  823 F.3d 537 (10th Cir. 2016) .................................................................4

*Colorado v. EPA*,
  989 F.3d 874 (10th Cir. 2021) .................................................................3

*FDA v. All. for Hippocratic,*
  *Med.*, 602 U.S. 367 (2024) .......................................................... 2, 3, 5

*Hackford v. Babbitt*,
  14 F.3d 1457 (10th Cir. 1994) .................................................................2

*Kan. Motorcycle Works USA, LLC v. McCloud*,
  569 F. Supp. 3d 1112 (D. Kan. 2021) ......................................................3

*Kansas v. Garland*,
  No. 2:24-cv-88, 2024 WL 2384611 (E.D. Ark. May 23, 2024) ...............2

*Oklahoma v. Biden*,
  577 F. Supp. 3d 1245 (W.D. Okla. 2021) ................................................3

*Peck v. McCann*,
  43 F.4th 1116 (10th Cir. 2022) ................................................................5

*Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*,
  993 F.3d 802 (10th Cir. 2021) .................................................................2

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014) ...................................................................... 4, 5

*Wyoming ex rel. Crank v. United States*,
  539 F.3d 1236 (10th Cir. 2008) ...............................................................3

*Wyoming v. U.S. Dep't of Interior*,
  674 F.3d 1220 (10th Cir. 2012) ...............................................................3

**REGULATIONS**

27 C.F.R. § 478.13.............................................................................. 4, 5

In opposing Defendants' Motion to Dismiss ("Motion"), ECF Nos. 170-71, Plaintiffs essentially argue that they have standing to challenge the Rule at issue in this case because they declare as much. *See, e.g.*, Pls.' Resp. to Defs.' Mot. to Dismiss at 10, ECF No. 178 ("Response") (arguing that the Court "must accept . . . as true" Chisholm Trail's allegation that the Rule will "negatively affect" its revenue); *id.* at 12 (arguing the same regarding the State plaintiffs' allegations "that they will lose tax revenue"). But the allegations in Plaintiffs' Complaint, ECF No 1, fail to plausibly establish that any plaintiff has standing—a fundamental flaw that Plaintiffs' Response cannot remedy.

## ARGUMENT

### I.    The State Plaintiffs Fail to Plead a Cognizable Injury That Is Actual or Imminent

The State plaintiffs' Response fails to overcome the fact that their two alleged injuries—that the Rule will purportedly (1) cause "States that collect taxes . . . related to gun shows" to lose revenue and (2) "result in an increase in administrative costs" related to the federally mandated background checks that Tennessee and New Hampshire elect to conduct themselves, Compl. ¶¶ 65, 108—are not actual or imminent nor legally cognizable, and thus fail to confer standing.

Regarding the former, Plaintiffs concede that their sales-tax theory of injury "relies on" a multi-step "chain of events"; they merely contend that they have adequately pleaded "each and every one of those steps." Response at 10. Looking solely to the allegations in Plaintiffs' Complaint, however, Plaintiffs plead, at most, that the Rule "is expected to" marginally "reduce the number of *individuals who sell firearms*, period" and, by extension, the "number of *vendors at gun shows*." Compl. ¶¶ 61-62 (emphasis added); *see also id.* ¶ 68 (alleging a decrease in "firearms *sellers*" who sell online (emphasis added)). They do not plead that the Rule will cause a reduction in the number of *firearms sold* in the aggregate (*i.e.*, by licensed and unlicensed sellers combined) in each State, or an across-the-board decline in *admissions* to all gun shows (*i.e.*, tickets sold to those who attend a show to observe or purchase firearms rather than sell them)—which, per the Complaint, are what the State plaintiffs actually tax. *See id.* ¶¶ 61-65 (alleging only a decrease in "the number of vendors at gun shows" and "the number of tables that are rented at gun shows"); *see also, e.g., id.* ¶ 75 (alleging that Kansas collects

a 6.5 percent sales tax on "admissions and sales of firearms during gun shows").[1]  Nor can either of those crucial links in the sales-tax theory be reasonably inferred from Plaintiffs' sparse allegations. *See Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 816 (10th Cir. 2021) ("[N]o allegations in the amended complaint make such an inference plausible.").  As Defendants explained in their Motion, a small decline in the number of unlicensed firearms *sellers* in no way mandates a corresponding decrease in *firearms sales*, as gun purchasers would simply acquire their firearms elsewhere.  Nor does it mandate a decrease in gun show *admissions*, which would hinge entirely on decisions made by potential gun show attendees who themselves are not even regulated by the Rule. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) ("[P]laintiffs attempting to show causation generally cannot 'rely on speculation about the unfettered choices made by independent actors not before the courts.'").  And it certainly cannot be reasonably inferred from the State plaintiffs' allegations that, at the end of the attenuated chain of events they describe, they are likely to actually experience the dip in sales tax revenues they allege.  That alleged sales-tax injury, in short, is neither actual nor imminent, *see Santa Fe All.*, 993 F.3d at 813 (noting that an injury in fact must "actually exist[]" (citation omitted)); *All. for Hippocratic Med.*, 602 U.S. at 381 ("[T]he injury must have already occurred or be likely to occur soon."), and the Court is "not bound" to accept "conclusory allegations" or "unwarranted inferences" to the contrary, *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

Plaintiffs' assertion that a "[l]oss of [state] tax revenue is a cognizable injury," Response at 11, even if true in some cases, is beside the point here.  The fundamental problem with their sales-tax theory of injury is that it hinges on speculation about the Rule's effect on the firearms markets in each State—which are multifaceted and comprise myriad buyers and sellers, licensed and unlicensed alike, who are affected by the Rule in different ways (or, in many cases, not at all)—and even more speculation about the Rule's alleged incidental effect on each State's sales tax revenues, which are

---

[1] The only State that allegedly taxes "tables . . . rented at gun shows" specifically, Compl. ¶ 64, is Arkansas, *see id.* ¶ 70 ("Arkansas charges a 1% short-term-rental tax on the cost of any table rentals that are at gun shows."), which has already been dismissed from this case for lack of standing. *See Kansas v. Garland*, No. 2:24-cv-88, 2024 WL 2384611, at *2 (E.D. Ark. May 23, 2024); *id.* ("It is speculative to assume that any potential, marginal[] loss of a 1% table tax would not be made up from the collection of sales tax from the sale of firearms being diverted to a licensed dealer.").

derived from sales of firearms and countless other goods and services.  The State plaintiffs, in other words, allege the very sort of attenuated impact on their "general tax revenues" that "should not . . . be recognized as" a legally cognizable injury "sufficient . . . to support state standing." *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1234 (10th Cir. 2012) (citation omitted).  The State plaintiffs assert that they nonetheless have standing because they "tax specific activities" (here, unlicensed firearms sales) that might be incidentally affected by a federal regulation.  Response at 14.  According to Plaintiffs, then, States would have standing to challenge any federal policy affecting agricultural production because they collect sales tax on groceries, or any regulation governing federal recreational areas because they tax hiking boots and hunting rifles, or any decision concerning the maintenance of federal facilities because they tax hammers and hard hats.  But such a sweeping theory cannot be squared with the Supreme Court's outright rejection last Term of a similarly "limitless approach" to standing.  *All. for Hippocratic Med.*, 602 U.S. at 391; *see id.* ("The government repeals certain restrictions on guns— does a surgeon have standing to sue because he might have to operate on more gunshot victims?").

As for Tennessee and New Hampshire's background-check theory of standing, Plaintiffs now frame that injury as a "sovereign" one, despite alleging nowhere in their Complaint that the Rule might "forc[e]" either State "to change its law[s]" governing background checks related to firearms sales, Response at 14.  *See Kan. Motorcycle Works USA, LLC v. McCloud*, 569 F. Supp. 3d 1112, 1127 (D. Kan. 2021) ("[A] party may not amend its complaint by way of arguments in a brief.").  The Rule, however, does not "interfere[] with" any state's "exercise of [its] 'power to create *and enforce* a legal code,'" *Oklahoma v. Biden*, 577 F. Supp. 3d 1245, 1253 (W.D. Okla. 2021); *see Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1242 (10th Cir. 2008), let alone compel any state to change its law, as Plaintiffs suggest.  Plaintiffs' Complaint, in any event, frames their background-check theory strictly in economic terms.  Compl. ¶ 108 (alleging "an increase in administrative costs").  And because that alleged harm is a direct consequence of Tennessee's and New Hampshire's voluntary decision to add a layer of state bureaucracy into the background check process, it is precisely the type of "self-inflicted" injury resulting from a state's legislative choice that is "not legally cognizable" for standing purposes.  *Colorado v. EPA*, 989 F.3d 874, 888 (10th Cir. 2021); *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013).

3

## II.     The Individual Plaintiffs Fail to Allege Conduct That Implicates the Rule

As explained in Defendants' Motion, the individual plaintiffs lack standing to bring a pre-enforcement challenge against the Rule because they fail to allege that they "intend[] to engage in conduct" that might implicate the Rule's definition of being "engaged in the business" of firearms dealing. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 546 (10th Cir. 2016).  Plaintiffs claim in their Response that this well-established standard for assessing standing in the pre-enforcement context— which is drawn from Supreme Court precedent, *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014)—applies only to challenges to statutes, and "not . . . to APA challenges to agency rules." Response at 3.  Yet they offer no support for this arbitrary distinction.  To the contrary, the Supreme Court made clear in *Driehaus* that it was addressing the circumstances under which, as a general matter, "the threatened enforcement of a law creates an Article III injury."  573 U.S. at 158.  It held that a prerequisite for standing in the pre-enforcement context is that a plaintiff "allege[] 'an intention to engage in a course of conduct arguably . . . proscribed by'" the law they are challenging.  *Id.* at 159.  A natural corollary of that holding is that a plaintiff will not be injured by, and thus lacks standing to seek prospective relief from, a law that will not affect them.  And Plaintiffs offer no explanation for why this principle does not apply with equal force to a pre-enforcement challenge to a regulation.  *See Am. Petroleum Inst. v. U.S. Dep't of Interior*, 823 F. App'x 583, 586 n.6 (10th Cir. 2020) (finding "no basis for" a "distinction" between "suits challenging statutes and . . . those challenging regulations").

The individual plaintiffs argue that they have standing so long as they are "the object of the government regulation" in question—here, the Rule.  Response at 3.  But this purportedly "different standard[]," *id.* at 4, merely restates the requirement that a plaintiff intend to engage in conduct "arguably . . . proscribed" by the law they are challenging.  *Driehaus*, 573 U.S. at 159.  And the individual plaintiffs' allegations fail to satisfy that requirement here because nowhere do they allege an intent to engage in conduct that would even arguably meet the necessary elements of being "engaged in the business" of firearms dealing, including that they sell firearms "to predominantly earn a profit," 27 C.F.R. § 478.13(a); *see, e.g.*, Compl. ¶ 3 (alleging only that Journey "sells firearms for and from his personal collection").  Any threat of the Rule being applied to the individual plaintiffs specifically is

4

thus "wholly conjectural," *Driehaus*, 573 U.S. at 163, and given the absence of any alleged intent to "obtain[] pecuniary gain" through repetitive firearms sales (let alone a "devot[ion]" of "time, attention, and labor to" such "dealing"), 27 C.F.R. § 478.13(a), (d)(1), that remains true irrespective of whether they "sell firearms multiple times a year" or sell "self-defense weapons." Response at 6, 8.

The individual plaintiffs also claim that the Rule's alleged "chilling effect" on their firearms-related conduct "provides [a] sufficient basis for standing." *Id.* at 7. They cite no authority, however, applying a "chilling effect" theory of standing outside of the First Amendment context. *See Peck v. McCann*, 43 F.4th 1116, 1129-30 (10th Cir. 2022) (describing the "relaxed standing test for chilled speech in the First Amendment context"). And the Supreme Court has confirmed, in any event, that "[a]llegations of a subjective chill" like those offered by Plaintiffs here "are not an adequate substitute for" the "specific present objective harm or . . . threat of specific future harm" that Article III requires. *Clapper*, 568 U.S. at 418 (citation omitted); *see id.* at 416 ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm . . . .").

## III.    Chisholm Trail Also Lacks Standing

The two theories of standing that Chisholm Trail advances both fail as well. As Plaintiffs' Response confirms, Chisholm Trail's claim to associational standing rises and falls with whether the individual plaintiffs have standing. Response at 9 (basing Chisholm Trail's standing on Black and Maxey and unnamed members whose alleged firearms-related conduct is indistinguishable from the individual plaintiffs'). And because the individual plaintiffs lack standing, Chisholm Trial cannot claim associational standing on their behalf. Chisholm Trail's alleged organizational injury likewise fails to confer standing because, much like the State plaintiffs' sales-tax theory, it relies too heavily on speculative assumptions about how myriad firearms sellers and gun show attendees will respond to a Rule that may or (in many cases) may not affect them, as well as an attenuated chain of causation in which the Rule is too "far removed" from any "distant (even if predictable) ripple effects" it allegedly might have on Chisholm Trail's gun show revenues. *All. for Hippocratic Med.*, 602 U.S. at 383.

## CONCLUSION

The Court should grant Defendants' motion to dismiss for lack of subject-matter jurisdiction.

5

Dated: September 18, 2024                    Respectfully submitted,


                                             BRIAN M. BOYNTON
                                             Principal Deputy Assistant Attorney General

                                             BRIGHAM J. BOWEN
                                             Assistant Director, Federal Programs Branch

                                             */s/ Zachary W. Sherwood*
                                             ZACHARY W. SHERWOOD
                                             (IN Bar No. 37147-49)
                                             JEREMY S.B. NEWMAN
                                             KERI L. BERMAN
                                             Trial Attorneys
                                             U.S. Department of Justice
                                             Civil Division, Federal Programs Branch
                                             1100 L Street NW
                                             Washington, DC 20005
                                             Phone: (202) 616-8467
                                             Fax: (202) 616-8470
                                             Email:  zachary.w.sherwood@usdoj.gov

                                             *Attorneys for Defendants*

6

## CERTIFICATE OF SERVICE

On September 18, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, District of Kansas, using the electronic case filing system of the Court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Zachary W. Sherwood
Zachary W. Sherwood